B 5 (Official Form 5) (12/07)

| UNITED STATES BANKRUPTCY COURT<br>Northern District of Texas | INVOLUNTARY<br>PETITION |
|---|---|
| IN RE (Name of Debtor – If Individual: Last, First Middle)<br>RANGERS EQUITY HOLDINGS, L.P. | ALL OTHER NAMES used by debtor in the last 8 years (Include married, maiden, and trade names.) |
| Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN (If more than one, state all.):<br>N/A | |

| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>100 Ballpark Way, Suite 400<br>Arlington, Texas 76011<br><br>COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS<br>Tarrant County, Texas<br>ZIP CODE<br>76011 | MAILING ADDRESS OF DEBTOR<br>(If different from street address)<br><br><br><br><br>ZIP CODE |
|---|---|

| LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses) |
|---|

| CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED<br>☐ Chapter 7    ☒ Chapter 11 |
|---|

**INFORMATION REGARDING DEBTOR (Check applicable boxes)**

| Nature of Debts<br>(Check one box.)<br>Petitioners believe:<br>☐ Debts are primarily consumer debts<br>☒ Debts are primarily business debts | Type of Debtor<br>(Form of Organization)<br>☐ Individual (Includes Joint Debtor)<br>☐ Corporation (Includes LLC and LLP)<br>☒ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br><br>_____ | Nature of Business<br>(Check one box.)<br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C § 101(51)(B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other<br>   Sports Franchise Owner |
|---|---|---|

| VENUE<br>☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br>☒ A bankruptcy case concerning debtor's affiliate, general partner or partnership in pending in this District. | FILING FEE (Check one box)<br>☒ Full Filing Fee attached<br>☐ Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.<br>*[If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.]* |
|---|---|

**PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER**
**OR AFFILIATE OF THIS DEBTOR** (Report information for any additional cases on attached sheets.)

| Name of Debtor<br>Texas Rangers Baseball Partners | Case Number<br>10-43400 (DML)-11 | Date<br>5/24/2010 |
|---|---|---|
| Relationship<br>Affiliate | District<br>N.D. Tex. | Judge<br>Lynn |

| ALLEGATIONS<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|
| 1.  ☒ Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).<br>2.  ☒ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.<br>3.a. ☒ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;<br>or<br>b.  ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession. | |

Name of Debtor  RANGERS EQUITY
Case No.  10-

## TRANSFER OF CLAIM

✓  Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information and belief.

| | |
|---|---|
| x _____ <br> Signature of Petitioner or Representative (State title) <br> Kingsland I, Ltd.              5/25/2010 <br> Name of Petitioner          Date Signed <br><br> c/o Kingsland Capital Management <br> 1325 Avenue of the Americas – 27th Floor, NY, NY 10019 <br> Pieter Van Schaick <br> Principal | x /s/ Andrew Leblanc _____ <br> Signature of Attorney              Date <br>   Milbank, Tweed, Hadley & McCloy LLP <br> Name of Attorney Firm (If any) <br> One Chase Manhattan Plaza, New York, NY 10005 <br> Address <br> (212) 530-5000 <br> Telephone No. |
| x _____ <br> Signature of Petitioner or Representative (State title) <br> Kingsland II, Ltd.             5/25/2010 <br> Name of Petitioner          Date Signed <br><br> c/o Kingsland Capital Management <br> 1325 Avenue of the Americas – 27th Floor, NY,NY 10019 <br> Pieter Van Schaick <br> Principal | x s/ Andrew Leblanc _____ <br> Signature of Attorney              Date <br>   Milbank, Tweed, Hadley & McCloy LLP <br> Name of Attorney Firm (If any) <br> One Chase Manhattan Plaza, New York, NY 10005 <br> Address <br> (212) 530-5000 <br> Telephone No. |
| x _____ <br> Signature of Petitioner or Representative (State title) <br> Kingsland III, Ltd.            5/25/2010 <br> Name of Petitioner          Date Signed <br><br> c/o Kingsland Capital Management <br> 1325 Avenue of the Americas – 27th Floor, NY,NY 10019 <br> Pieter Van Schaick <br> Principal | x/s/ Andrew Leblanc _____ <br> Signature of Attorney              Date <br>   Milbank, Tweed, Hadley & McCloy LLP <br> Name of Attorney Firm (If any) <br> One Chase Manhattan Plaza, New York, NY 10005 <br> Address <br> (212) 530-5000 <br> Telephone No. |

## PETITIONING CREDITORS

| | | |
|---|---|---|
| Kingsland I, Ltd. <br> c/o Kingsland Capital Management, as Manager -- 1325 Avenue of the Americas – 27th Floor, NY, NY 10019 | Nature of Claim <br> Secured Guaranty | Amount of Claim <br> $3,000,000.00 |
| Kingsland II, Ltd. <br> c/o Kingsland Capital Management, as Manager -- 1325 Avenue of the Americas – 27th Floor, NY, NY 10019 | Nature of Claim <br> Secured Guaranty | Amount of Claim <br> $4,000,000.00 |
| Kingsland III, Ltd. <br> c/o Kingsland Capital Management, as Manager -- 1325 Avenue of the Americas – 27th Floor, NY, NY 10019 | Nature of Claim <br> Secured Guaranty | Amount of Claim <br> $5,200,000.00 |
| Note:    If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioner's Claims <br> $12,200,000.00 |

4 _____ continuation sheets attached

Name of Debtor  <u>RANGERS EQUITY</u>

Case No.    <u>10-</u>

## TRANSFER OF CLAIM

✓  Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.  If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

| | |
|---|---|
| Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief. | |
| x _Managing Principal_ (signature) <br> Signature of Petitioner or Representative (State title) <br> Monarch Master Funding Ltd. | x /s/ Andrew Leblanc <br> Signature of Attorney              Date <br> Milbank, Tweed, Hadley & McCloy LLP |
| Name of Petitioner            Date Signed | Name of Attorney Firm (If any) <br> One Chase Manhattan Plaza, New York, NY 1005 |
| Name & Mailing <br> Address of Individual            535 Madison Avenue <br> Signing in Representative       New York, NY 10021 <br> Capacity | Address <br> (212) 530-5000 <br> Telephone No. |
| x _____ <br> Signature of Petitioner or Representative (State title) | x _____ <br> Signature of Attorney              Date |
| Name of Petitioner            Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing <br> Address of Individual <br> Signing in Representative <br> Capacity | Address <br><br> Telephone No. |
| x _____ <br> Signature of Petitioner or Representative (State title) | x _____ <br> Signature of Attorney              Date |
| Name of Petitioner            Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing <br> Address of Individual <br> Signing in Representative <br> Capacity | Address <br><br> Telephone No. |

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Monarch Master Funding Ltd.., 535 Madison Ave., NY, NY 10021 | Secured Guaranty | $119,819,887.00 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Note:   If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioner's Claims |

_____ continuation sheets attached

| TRANSFER OF CLAIM | |
|---|---|
| ✓   Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). | |

| REQUEST FOR RELIEF | |
|---|---|
| Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.  If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached. | |

| | |
|---|---|
| Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief. | |
| x _____ Signature of Petitioner or Representative (State title) | x /s/ Andrew Leblanc _____ Signature of Attorney              Date |
| Avery Point CLO, Limited      5/27/2010 | Milbank, Tweed, Hadley & McCloy LLP |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) One Chase Manhattan Plaza, New York, NY 10005 |
| c/o Sankaty Advisors, LLC 111 Huntington Avenue, Boston, MA 02199 Andrew S. Viens Senior Vice President of Operations | Address (212) 530-5000 Telephone No. |
| x _____ Signature of Petitioner or Representative (State title) | x /s/ Andrew Leblanc _____ Signature of Attorney              Date |
| Chatham Light CLO, Limited 5/27/2010 | Milbank, Tweed, Hadley & McCloy LLP |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) One Chase Manhattan Plaza, New York, NY 10005 |
| c/o Sankaty Advisors, LLC 111 Huntington Avenue, Boston, MA 02199 Andrew S. Viens Senior Vice President of Operations | Address (212) 530-5000 Telephone No. |
| x _____ Signature of Petitioner or Representative (State title) | x /s/ Andrew Leblanc _____ Signature of Attorney              Date |
| Race Point IV CLO, Ltd.      5/27/2010 | Milbank, Tweed, Hadley & McCloy LLP |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) One Chase Manhattan Plaza, New York, NY 10005 |
| c/o Sankaty Advisors, LLC 111 Huntington Avenue, Boston, MA 02199 Andrew S. Viens Senior Vice President of Operations | Address (212) 530-5000 Telephone No. |

| PETITIONING CREDITORS | | |
|---|---|---|
| Avery Point CLO, Limited c/o Sankaty Advisors, LLC, 111 Huntington Avenue, Boston, MA 02199 | Nature of Claim Secured Guaranty | Amount of Claim $1,256,013.67 |
| Chatham Light II CLO, Limited c/o Sankaty Advisors, LLC, 111 Huntington Avenue, Boston, MA 02199 | Nature of Claim Secured Guaranty | Amount of Claim $3,893,317.70 |
| Race Point IV CLO, Ltd. c/o Sankaty Advisors, LLC, 111 Huntington Avenue, Boston, MA 02199 | Nature of Claim Secured Guaranty | Amount of Claim $2,006,339.60 |
| Note:   If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioner's Claims |

_____ continuation sheets attached

**TRANSFER OF CLAIM**

✓  Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

**REQUEST FOR RELIEF**

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| x _____ | x /s/ Andrew Leblanc |
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| Nash Point CLO          5/27/2010 | Milbank, Tweed, Hadley & McCloy LLP |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| | One Chase Manhattan Plaza, New York, NY 10005 |
| c/o Sankaty Advisors, LLC | Address |
| 111 Huntington Avenue, Boston, MA 02199 | (212) 530-5000 |
| Andrew S. Viens | Telephone No. |
| Senior Vice President of Operations | |
| x _____ | x _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| | |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| | |
| | Address |
| | |
| | Telephone No. |
| x _____ | x _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| | |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| | |
| | Address |
| | |
| | Telephone No. |

**PETITIONING CREDITORS**

| Nash Point CLO | Nature of Claim | Amount of Claim |
|---|---|---|
| c/o Sankaty Advisors, LLC, 111 Huntington Avenue, Boston, MA 02199 | Secured Guaranty | $1,955,730.62 |
| | Nature of Claim | Amount of Claim |
| | Secured Guaranty | |
| | Nature of Claim | Amount of Claim |
| | Secured Guaranty | |

| Note: | If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | Total Amount of Petitioner's Claims $9,111,401.59 |
|---|---|---|

**TRANSFER OF CLAIM**

✓   Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

**REQUEST FOR RELIEF**

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.  If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

| | |
|---|---|
| Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief. | |
| x _Wayne_____ | x /s/ Andrew Leblanc _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                    Date |
| Stonehill Offshore Partners Limited       5/28/2010 | Milbank, Tweed, Hadley & McCloy LLP |
| Name of Petitioner            Date Signed | Name of Attorney Firm (If any) |
| | One Chase Manhattan Plaza, New York, NY 1005 |
| c/o Stonehill Capital Management LLC | Address |
| 885 Third Avenue, 30th Floor | (212) 530-5000 |
| New York, NY  10022 | Telephone No. |
| By Wayne Teetsel, Managing Member | |
| x _____ | x _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                    Date |
| Name of Petitioner            Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing | |
| Address of Individual | Address |
| Signing in Representative | |
| Capacity | Telephone No. |
| x _____ | x _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                    Date |
| Name of Petitioner            Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing | |
| Address of Individual | Address |
| Signing in Representative | |
| Capacity | Telephone No. |

**PETITIONING CREDITORS**

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Stonehill Offshore Partners Limited<br>89 Nexus Way, 2nd Floor<br>Camana Bay<br>P.O. Box 31106<br>Grand Cayman  KY1-1205<br>Cayman Islands | Secured Guaranty | $3,300,000 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |

**<u>Exhibit A</u>**

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF KINGSLAND I, LTD.

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Kingsland I, Ltd. against Rangers Equity

Holdings, L.P. (the "Debtor") were acquired on or about January 23, 2006, as reflected in the

attached documentation.  Kingsland I, Ltd. acquired its claims for investment purposes and not

for the purpose of commencing a bankruptcy case against the Debtor.

Date:  May 25, 2010

                                    KINGSLAND I, LTD.
                                    KINGSLAND CAPITAL MANAGEMENT, As
                                    Manager

                                    By _____
                                    Name:  Pieter Van Schaick
                                    Title:    Principal

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (the "Assignor") and Kingsland I, Ltd. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agents as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:            ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. Assignee:            Kingsland I, Ltd.

3. Borrower(s):         SOUTHWEST SPORTS GROUP LLC

4. Co-Administrative Agents:   GOLDMAN SACHS CREDIT PARTNERS L.P. and JPMORGAN CHASE BANK, N.A., as the co-administrative agents under the Credit Agreement

5. Credit Agreement:    The $325,000,000 Credit Agreement dated as of December 22, 2005 among SOUTHWEST SPORTS GROUP LLC ("Company"), SOUTHWEST SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, GOLDMAN SACHS CREDIT PARTNERS, L.P. and JPMORGAN CHASE BANK, N.A., as Co-Administrative Agents, and the other agents parties thereto.

6. Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment/Loans for all Lenders | Amount of Commitment/Loans Assigned | Percentage Assigned of Commitment/Loans* |
|---|---|---|---|
| Term Loan | $285,000,000.00 | $1,000,000.00 | 0.350877193 % |

Effective Date:    January 23, 2006

**7. Notice and Wire Instructions:**



Wire Instructions:

**Bank:**
**ABA#:**
**Acct Name:**
**Acct #:**
**FFC:**
**Attn:**
**Ref:**

Notices:

**Phone:**
**Fax:**
**Contact:**
**E-mail:**

*Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

**Kingsland I, Ltd.**

Wire Instructions:

Kingsland I, Ltd.

| | |
|---|---|
| **Bank:** | JPMorgan Chase Bank - Texas |
| **ABA#:** | 113-000-609 |
| **Acct Name:** | Asset Backed – Structured #2 |
| **Acct #:** | 00102619468 |
| **FFC:** | Kingsland I / A/C # 10223276.3 |
| **Attn:** | Charles Janz / [Loan Name / Description Principal or Interest] |
| **Ref:** | SOUTHWEST SPORTS GROUP LLC |

Notices:

Kingsland I, Ltd.
c/o JPMorgan Chase Bank

600 Travis Street, 50th Floor
Houston, TX 77002
Phone: 713-216-4821
Fax: 281-582-7986
Contact: Charles Janz
E-mail:

Page 3

The terms set forth in this Assignment are hereby agreed to:

                                   ASSIGNOR



                                   ██ as Assignor


                              By: ████████████

                                   Name: ██████

                                   Title: ██████████


                                   ASSIGNEE

                                   **KINGSLAND I, LTD., as Assignee**

                                   By: KINGSLAND CAPITAL MANAGEMENT,
                                   LLC

                                   AS MANAGER


                              By: _____

                                   Name:  Vincent Siino
                                   Title:   Director of Portfolio Administration

Consented to and Accepted:

**GOLDMAN SACHS CREDIT PARTNERS L.P., as
Co-Administrative Agent**

By: _Jennifer Canu_ _____
    Name: Jennifer Canu
    Title:  Authorized Signatory

Consented to:

**SOUTHWEST SPORTS GROUP LLC**

By: _____N/A_____ _____
    Name:
    Title:

Page 5

ANNEX 1

## STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
## AND ASSUMPTION AGREEMENT

1. **Representations and Warranties.**

1.1 **Assignor.** The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2. **Assignee.** The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2. **Payments.** All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1 With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2 With respect to Assigned Interests for Revolving Loans, from and after the Effective Date, the Administrative Agent(s) shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.*

3. **General Provisions.** This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and

---

*Administrative Agent should consider whether this method conforms to its systems. In some circumstances, the following alternative language may be appropriate: "From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignee whether such amounts have accrued prior to or on or after the Effective Date. The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves."

their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.



# LSTA PAR/NEAR PAR TRADE CONFIRMATION

**To:**  ***Kingsland I, Ltd.***
    ***Attention: Vincent Silno***
    ***Phone No.: 212.786.6327***
    ***Fax No.: 646.514.3770***
    ***E-mail: silno@kingslandcap.com***

**From:** ████████████
    ***Attention:*** ████████
    ***Phone No.:*** ████████
    ***Fax No.:*** ████████
    ***E-mail:*** ████████

**Date:**  *1/5/2006 6:14:35 PM*

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.℗ (the "LSTA") as of May 2005, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

**Trade Date:**  1/4/2006

**Seller:**  ████████████████  ☑ Principal ☐ Agent

**Buyer:**  Kingsland I, Ltd.  ☑ Principal ☐ Agent

**Credit Agreement:**  Credit and Guaranty Agreement dated December 22, 2005 among Southwest Sports Group, LLC, Southwest Sports Group Holdings LLC, the Lenders from time to time party thereto, Goldman Sachs Credit Partners L.P. and JPMorgan Chase Bank, N.A., as co-Administrative Agents

**Borrower:**  SOUTHWEST SPORTS GROUP LLC

**Form of Purchase:**  Assignment

**Purchase Amount/
Type of Debt:**

| Purchase Amount | Type of Debt | Facility | CUSIP Number |
|---|---|---|---|
| $1,000,000.00 | Term | Term Loan | |

**Purchase Rate:**       ████████Term Loan

**Up front Fees: (if any):**    None

**Credit Documentation**
**to be provided by Seller:**    No

**Trade Specific**         Recordation Fee is waived.
**Other Terms of Trade:**    Settled with accrued interest

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the attention of Kenny Beauchette at ClearPar, LLC at the following fax number 845-639-7890 or e-mail address: kenny.beauchette@fnf.com.

If you have any questions, please contact Kenny Beauchette at 845-639-4826.

<table>
<tr><td>████████████████████<br>████████████</td><td>**KINGSLAND I, LTD.**</td></tr>
<tr><td></td><td>By: KINGSLAND CAPITAL MANAGEMENT, LLC<br><br>AS MANAGER</td></tr>
<tr><td>By: _____<br>Name: ████████████<br>Title:  Authorized Signatory</td><td>By: _____<br>Name:  Vincent Siino<br>Title:  Director of Portfolio<br>           Administration</td></tr>
</table>

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF KINGSLAND III, LTD.

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Kingsland III, Ltd. against Rangers Equity

Holdings, L.P. (the "Debtor") were acquired on or about February 27, 2006, September 21, 2006

and January 24, 2007, as reflected in the attached documentation.  Kingsland III, Ltd. acquired

its claims for investment purposes and not for the purpose of commencing a bankruptcy case

against the Debtor.

Date:  May 25, 2010

                         KINGSLAND III, LTD.
                         KINGSLAND CAPITAL MANAGEMENT, As
                         Manager
                         By _____
                         Name:  Pieter Van Schaick
                         Title:    Principal

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (the "Assignor") and Kingsland III, Ltd. (the "Assignee").  Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee.  The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest").  Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor:                          ▓▓▓▓▓▓▓▓▓▓▓▓

2.  Assignee:                          Kingsland III, Ltd.

3.  Borrower(s):                       HICKS SPORTS GROUP LLC

4.  Administrative Agent:              JPMORGAN CHASE BANK, N.A., as administrative agent under the Credit Agreement.

5.  Credit Agreement:                  The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among HICKS SPORTS GROUP LLC ("Company"), HICKS SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, JPMORGAN CHASE BANK, N.A., as administrative agent, and the other agents parties thereto.

6. Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| Term Loan | USD 350,000,000.00 | USD 200,000.00 | 0.057142857% |

Effective Date:    January 2͟4͟, 2007

---

* Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

████████████████████████, as
Assignor

By: _____

Name: ████████████

Title:    Associate

ASSIGNEE

KINGSLAND III, LTD., as Assignee

By: KINGSLAND CAPITAL MANAGEMENT, LLC, AS
MANAGER

By: _____

Name:    Vincent  Silno

Title:    Director of Portfolio Admin

Consented to and Accepted:

**JPMORGAN CHASE BANK, N.A., as Administrative Agent**

By: _Sharon Rock_

Name: Sharon Rock
Title: Associate

Consented to:

**HICKS SPORTS GROUP LLC**

By: _N/A_

Name:
Title:

**GOLDMAN SACHS CREDIT PARTNERS L.P.**

By: _N/A_

Name:
Title:

ANNEX I

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.   Representations and Warranties.

1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2    Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of commercial lending and has capital and surplus and undivided profits of at least $250,000,000**; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.


** This representation and warranty to be given only if the Assignee meets such requirements.  If the Assignee does not meet such requirements, then the effectiveness of this Assignment is, under the terms of the NHL Consent Letter, subject to consent of the NHL.

2.   Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1  Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.   General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.



# LSTA PAR/NEAR PAR TRADE CONFIRMATION

**To:**    **Kingsland III, Ltd.**

      **Attention:**    **Anita Kallicharran**

      **Phone No.:**    **(212)763-8378**

      **Fax No.:**

      **Email:**    **kallicharran@kingslandcap.com**

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮

      **Attention:**    ▮▮▮▮▮▮

      **Phone No.:**    ▮▮▮▮▮

      **Fax No.:**    ▮▮▮▮▮▮▮

      **Email:**

**Date:**    **11/24/2006**

      We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of December 1, 2006, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

**Trade Date:**    11/21/2006

**Seller:**    ▮▮▮▮▮▮▮▮▮▮▮▮    ☑ Principal ☐ Agent

**Buyer:**    Kingsland III, Ltd.    ☑ Principal ☐ Agent

**Credit Agreement:**    Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent.

**Borrower:**    Hicks Sports Group LLC

**Form of Purchase:**    Assignment

279562001

LSTA EFFECTIVE DECEMBER 2006 Copyright © LSTA 2006. All rights reserved.

| Purchase Amount/ Type of Debt: | Purchase Amount | Type of Debt | Facility | CUSIP Number |
|---|---|---|---|---|
| | USD 200,000.00 | Term | Term Loan | |

**Purchase Rate:**  Term Loan

**Up Front Fees:**
**(if any):**

**Credit Documentation**     No
**to be provided:**

**Trade Specific**
**Other Terms of Trade:**

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnf.com
If you have any questions, please contact Lisa Hofle at 845-639-4806.

Kingsland III, Ltd.
By: KINGSLAND CAPITAL MANAGEMENT,
LLC, AS MANAGER

By:

Name:
Title: Trader

By:

Name: Vincent Siino
Title: Director of Portfolio Admin

279562001                                                    Page 2 of 2

LSTA EFFECTIVE DECEMBER 2006  Copyright © LSTA 2006.  All rights reserved.

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮(the "Assignor") and Kingsland III, Ltd. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agents as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor:                        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2.  Assignee:                        Kingsland III, Ltd.

3.  Borrower(s):                     SOUTHWEST SPORTS GROUP LLC

4.  Co-Administrative Agents:        GOLDMAN SACHS CREDIT PARTNERS L.P. and JPMORGAN CHASE
                                     BANK, N.A., as the co-administrative agents under the Credit Agreement

5.  Credit Agreement:                The $325,000,000 Credit Agreement dated as of December 22, 2005 among
                                     SOUTHWEST SPORTS GROUP LLC ("Company"), SOUTHWEST SPORTS
                                     GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE
                                     COMPANY, as Guarantors, the lenders party thereto, GOLDMAN SACHS
                                     CREDIT PARTNERS, L.P. and JPMORGAN CHASE BANK, N.A., as
                                     Co-Administrative Agents, and the other agents parties thereto.

6.  Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| Term Loan | $285,000,000.00 | $2,000,000.00 | 0.701754386% |

Effective Date:          February 27, 2006

7.  Notice and Wire Instructions:

Notices:                                          Notices:

████████████████████                              Kingsland III, Ltd.
████████████████                                  JPMorgan Chase Bank, N.A. 600 Travis Street
                                                  50th Floor
New York, NY-10004                                Houston, TX-77002
USA                                               USA
Phone: ████████████                               Phone:  (713)216-4821
Fax:                                              Fax:    281-667-3400
Contact: ████████                                 Contact: Charles Janz
Email: ██████████████                             Email:  charles.janz@chase.com

Wire Instructions:                                Wire Instructions:

Bank:        Citibank N.A.                         Bank:        JPMorgan Chase Bank  - Texas
ABA#: ████████                                     ABA#:        021-000-021
Account#: ████████                                 Account#:    00102619468
Account Name: ████████████████                     Account Name: Asset Backed – Structured #2
FFC:                                               FFC:         Kingsland III / A/C # 10225746.1
Attn: ████████████████████                         Attn:        Charles Janz
Reference: ████████████████                        Reference:   Southwest Sports Group LLC (12/05)

---

* Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

Assignor

By:

Name:

Title:    Associate

ASSIGNEE

KINGSLAND III, LTD., as Assignee

By:

Name:    Vincent Siino

Title:    Director of Portfolio Admin

206320 - 001

3

Consented to and Accepted:

**GOLDMAN SACHS CREDIT PARTNERS L.P., as**
**Co-Administrative Agent**

By: _____

Name:   Jennifer Canu
Title:   Associate

Consented to:

**SOUTHWEST SPORTS GROUP LLC**

By:   N/A _____

Name:

Title:

ANNEX 1

## STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
## AND ASSUMPTION AGREEMENT

1.  **Representations and Warranties.**

    1.1    Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document; (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

    1.2    Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.  Payments. All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

    2.1    With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

    2.2    With respect to Assigned Interests for Revolving Loans, from and after the Effective Date, the Administrative Agent(s) shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.**

3.  General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

---

** Administrative Agent should consider whether this method conforms to its systems.  In some circumstances, the following alternative language may be appropriate: "From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignee whether such amounts have accrued prior to or on or after the Effective Date.  The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves."



# LSTA PAR/NEAR PAR TRADE CONFIRMATION

**To:**   *Kingsland III, Ltd.*
   *Attention:*      *Vincent Silno*
   *Phone No.:*      *(212)763-8362*
   *Fax No.:*        *(646)514-3770*
   *Email:*          *silno@kingslandcap.com*

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   *Attention:*      ▮▮▮▮▮▮▮
   *Phone No.:*      ▮▮▮▮▮▮▮
   *Fax No.:*        ▮▮▮▮▮▮▮
   *Email:*          ▮▮▮▮▮▮▮

**Date:**   *02/16/2006*

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of May 1, 2005, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date:** | 02/14/2006 |
| **Seller:** | ▮▮▮▮▮▮▮▮▮▮▮▮    ☑ Principal  ☐ Agent |
| **Buyer:** | Kingsland III, Ltd.    ☑ Principal  ☐ Agent |
| **Credit Agreement:** | Credit and Guaranty Agreement dated December 22, 2005 among Southwest Sports Group, LLC, Southwest Sports Group Holdings LLC, the Lenders from time to time party thereto, Goldman Sachs Credit Partners L.P. and JPMorgan Chase Bank, N.A., as co-Administrative Agents |
| **Borrower:** | SOUTHWEST SPORTS GROUP LLC |
| **Form of Purchase:** | Assignment |

**Purchase Amount/ Type of Debt:**

| Purchase Amount | Type of Debt | Facility | CUSIP Number |
|---|---|---|---|
| USD 2,000,000.00 | Term | Term Loan | |

**Purchase Rate:**                ███████      Term Loan

**Up Front Fees:**         ████████████
**(if any):**

**Credit Documentation**      No
**to be provided:**

**Trade Specific**          ███████████████
**Other Terms of Trade:**

                                ██████████████

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of  Yolanda Colonna at ClearPar at the following fax number (646)453-2870 or email address: yolanda.colonna@fnf.com
If you have any questions, please contact Yolanda Colonna at (845)639-4825.


████████████████                    **Kingsland III, Ltd.**


By: _____          By: _____

       Name:                                  Name:   Vincent Siino
       Title:                                    Title:    Director of Portfolio Admin

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ██████████████████ (the "Assignor") and Kingsland III, Ltd. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agents as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters of credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:            ██████████████████

2. Assignee:            Kingsland III, Ltd.

3. Borrower(s):         SOUTHWEST SPORTS GROUP LLC

4. Co-Administrative Agents:    GOLDMAN SACHS CREDIT PARTNERS L.P. and JPMORGAN CHASE
                        BANK, N.A., as the co-administrative agents under the Credit Agreement

5. Credit Agreement:    The $325,000,000 Credit Agreement dated as of December 22, 2005 among
                        SOUTHWEST SPORTS GROUP LLC ("Company"), SOUTHWEST SPORTS
                        GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE
                        COMPANY, as Guarantors, the lenders party thereto, GOLDMAN SACHS
                        CREDIT PARTNERS, L.P. and JPMORGAN CHASE BANK, N.A., as
                        Co-Administrative Agents, and the other agents parties thereto.

239829 - 003

SEP 21 2006 12:08 FR                              TO 916464532870      P.10/14

6.  Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| Term Loan | USD 325,000,000.00 | USD 2,500,000.00 | 0.769230769% |

Effective Date:         September 2, 2006

7.   Notice and Wire Instructions:

Notices:                                          Notices:

███████████████████                              Kingsland III, Ltd.
███████████████████                              600 Travis Street 50th Floor

███████████                                       Houston, TX-77002
USA  ████████████                                 USA
Phone: ████████████                               Phone: (713)216-4821
Fax:   ████████                                   Fax:   (281)667-3400
Contact: ████████                                 Contact: Charles Janz-KIII
Email: ████████████████                           Email:  charles.janz@chase.com

Wire Instructions:                                Wire Instructions:

Bank:    Citibank N.A.                            Bank:       JPMorgan Chase Bank - Texas
ABA#:    ████████████                             ABA#:       021-000-021
Account#: ██████████                              Account#:   00102619468
Account Name: ██████████                          Account Name: Asset Backed – Structured #2
FFC:                                              FFC:        Kingsland III / A/C # 10225746.1
Attn:                                             Attn:       Charles Janz
Reference: ████████████████████                   Reference:  Southwest Sports Group LLC (12/05)

---

*  Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

239829 - 001                                                                    2

The terms set forth in this Assignment are hereby agreed to:

**ASSIGNOR**

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, as

Assignor

By: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Name: ▉▉▉▉▉▉▉▉

Title:    Director

**ASSIGNEE**

**KINGSLAND III, LTD., as Assignee**

By: KINGSLAND CAPITAL MANAGEMENT, LLC, AS
MANAGER

By: _____

Name:    Vincent Siino

Title:    Director of Portfolio Admin

239829 - 001                                                                    3

Consented to and Accepted:

**JPMORGAN CHASE BANK, N.A., as Co-Administrative Agent**

By:

Name:

Title:

Consented to:

**SOUTHWEST SPORTS GROUP LLC**

By:

Name:

Title:

239829 - 001

4

ANNEX 1

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.  Representations and Warranties.

1.1     Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2     Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.  Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1     With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2     With respect to Assigned Interests for Revolving Loans, from and after the Effective Date, the Administrative Agent(s) shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.**

3.   General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

---

** Administrative Agent should consider whether this method conforms to its systems.  In some circumstances, the following alternative language may be appropriate: "From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignee whether such amounts have accrued prior to or on or after the Effective Date.  The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves."

**Exhibit B**

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF MONARCH MASTER FUNDING LTD.

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Monarch Master Funding Ltd. ("Monarch")

against Rangers Equity Holdings, L.P. (the "Debtor") were acquired on or about November 12,

2008; November 24, 2008; December 1, 2008; December 3, 2008; August 26, 2009; September

16, 2009; September 24, 2009; September 29, 2009; October 24, 2009; October 29, 2009;

October 30, 2009; February 2, 2010; and April 1, 2010, as reflected in the attached

documentation.  Monarch acquired its claims for investment purposes and not for the purpose of

commencing a bankruptcy case against the Debtor.

Date:  May 25, 2010

                                MONARCH MASTER FUNDING LTD.


                                By _____
                                Name:  Andrew Herenstein
                                Title:  Managing Principal

# LSTA PAR/NEAR PAR TRADE CONFIRMATION

To:    **Monarch Master Funding Ltd**
     Attention:    **Michael Gillin**
     Phone No.:    **(212) 554-1743**
     Fax No.:    **(866)741-3564**
     Email:    **michael.gillin@monarchlp.com**

From:    ▇▇▇▇▇▇▇▇
     Attention:
     Phone No.:
     Fax No.:
     Email:

Date:   *11/14/2008*

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of December 1, 2006, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | | |
|---|---|---|
| **Trade Date:** | 11/12/2008 | |
| **Seller:** | ▇▇▇▇▇▇▇▇ | ☑ Principal ☐ Agent |
| **Buyer:** | Monarch Master Funding Ltd | ☑ Principal ☐ Agent |

**Credit Agreement:**    Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent.

**Borrower:**    Hicks Sports Group LLC

**Form of Purchase:**    Assignment

607246001

LSTA EFFECTIVE DECEMBER 2006   Copyright © LSTA 2006. All rights reserved.

| Purchase Amount/ Type of Debt: | ███████ | ███████ | ███████ | ███████ |
|---|---|---|---|---|
| | USD 4,000,000.00 | Term | Term Loan | |

**Purchase Rate:**          ████████          Term Loan

**Up Front Fees:**          ████████
**(if any):**

**Credit Documentation**          No
**to be provided:**

**Trade Specific**          ████████████████████████
**Other Terms of Trade:**          ████████████████████████

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com

If you have any questions, please contact Lisa Hofle at 845-639-4806.

████████████

**Monarch Master Funding Ltd**
**By: Monarch Alternative Capital LP, as its advisor**

By: _____          By: _____

    Name:                                   Name:   **Christopher Santana**
    Title:                                  Title:   **Managing Principal**

607246001                                   Page 2 of 2

LSTA EFFECTIVE DECEMBER 2006  Copyright © LSTA 2006. All rights reserved.

| | | |
|---|---|---|
| **Purchase Rate:** | ████ | Term Loan |
| **Up Front Fees:** (if any): | ████ | |
| **Credit Documentation** to be provided: | No | |
| **Trade Specific** **Other Terms of Trade:** | ████████████ | |

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com
If you have any questions, please contact Lisa Hofle at 845-639-4806.

████████

**Monarch Master Funding Ltd**
**By: Monarch Alternative Capital LP**
**Its: Advisor**

████████

By: _____

By: _____

Name: ████

Name: _____

Title:  Associate

Title: _____

607246001

LSTA EFFECTIVE December 2006  Copyright © LSTA 2006.  All rights reserved.

March 26, 2009

Monarch Master Funding Ltd.                    JPMorgan Chase Bank, N.A.
c/o Monarch Alternative Capital, LP            270 Park Avenue
535 Madison Avenue                             New York, NY 10022
New York, NY 10022                             Attention:  Richard Gabriel
Attention: Michael Gillin
Dallas Stars, L.P.
200 Crescent Court, Suite 1600
Dallas, Texas  75201
Attention:  Thomas O. Hicks



Ladies and Gentlemen:

Reference is hereby made to: (i) that certain Assignment and Assumption Agreement, dated as of March 26, 2009, attached hereto (the "Assignment Agreement"), between ▮▮▮▮▮▮▮ as assignor ("Assignor"), and Monarch Master Funding Ltd., as assignee (the "Assignee"), and (ii) that certain Letter Agreement, dated December 19, 2006 (the "Letter Agreement"), among JPMorgan Chase Bank, N.A., as administrative agent and collateral agent under the First Lien Operative Documents (as defined in the Letter Agreement), Barclays Bank PLC, as administrative agent and collateral agent under the Second Lien Operative Documents (as defined in the Letter Agreement), Dallas Stars, L.P., a Delaware limited partnership doing business as the Dallas Stars, Hicks Sports Group LLC (f/k/a Southwest Sports Group LLC), a Texas limited liability company, Hicks Sports Group Holdings LLC (f/k/a Southwest Sports Group Holdings LLC), a Texas limited liability company, HSG Partnership Holdings LLC (f/k/a SSG Partnership Holdings LLC), a Texas limited liability company, Texas Rangers Baseball Partners, a Texas general partnership, Emerald Diamond, L.P., a Texas limited partnership, Dallas Arena LLC, a Texas limited liability company, Dallas Stars U.S. Holdings Corp, a Delaware corporation, StarCenters LLC, a Texas limited liability company, Southwest Sports Television, L.P., a Texas limited partnership, and Southwest Sports Group Baseball, L.P., a Texas limited partnership, the National Hockey League (the "NHL") and the other parties thereto.  Capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Letter Agreement.  You have asked for the NHL's written consent to the parties entering into the Assignment Agreement.

You represent, warrant and covenant that the Assignment Agreement attached hereto is a true, correct and complete copy thereof.  The Assignee represents, warrants and covenants that it has been provided with a copy of the Letter Agreement, and understands that the Letter Agreement affects certain rights of, and imposes certain obligations on, the Lenders under the First Lien Credit Agreement.  The Assignee hereby agrees that upon its acceptance of the assignment hereunder, it shall be bound in all respects by each term and condition of the Letter Agreement applicable to the Assignee as a Lender thereunder as fully as though it was a signatory to such Letter Agreement itself and further acknowledges, understands and agrees that, and notwithstanding anything in the Assignment Agreement or any other Operative Document: (a) the exercise by any Agent and/or any Lender of remedies under any Operative Document will be made in accordance with the terms and conditions of the Letter Agreement, the terms and conditions of which the Assignor and the Assignee have each accepted as reasonable and appropriate, and (b) as between the Agents and the Lenders on one hand and the NHL on the other, in the event of any conflict or inconsistency between the terms and conditions of the Letter Agreement and the terms and conditions of any Operative Document (including without limitation the Assignment Agreement), the terms and conditions of the Letter Agreement will control.  The Assignee hereby authorizes the Agents to perform on its behalf the Letter Agreement and to execute, deliver and perform all amendments, modifications, extensions, waivers and other acts in connection with the Letter Agreement as the Agents shall deem appropriate, and all third parties shall be entitled to rely on the Agents' taking of any such action or execution of any such document as conclusive evidence of its authority to do so.

Based solely upon and in reliance on the representations, warranties, covenants and agreements set forth herein and in the Letter Agreement, the NHL hereby consents to the parties entering into the Assignment Agreement.

This consent is limited solely for the purposes and to the extent expressly set forth herein, shall be effective on the date hereof, and the terms and conditions of the Letter Agreement, shall continue in full force and effect.

This consent shall be governed by, and construed in accordance with, the laws of the State of New York, without reference to the conflicts of law provisions thereof.

Very truly yours,

NATIONAL HOCKEY LEAGUE

By: _____
David Zimmerman, Esq.
Executive Vice President and
General Counsel

ACKNOWLEDGED AND AGREED TO
AS OF _____ ____, 2009:

DALLAS STARS, L.P.

By:  HSG Partnership Holdings LLC, its Managing Partner

By: _____
Name:
Title:

MONARCH MASTER FUNDING LTD.

By: Monarch Alternative Capital LP, its Advisor

By: _____
Name:
Title:

Based solely upon and in reliance on the representations, warranties, covenants and agreements set forth herein and in the Letter Agreement, the NHL hereby consents to the parties entering into the Assignment Agreement.

This consent is limited solely for the purposes and to the extent expressly set forth herein, shall be effective on the date hereof, and the terms and conditions of the Letter Agreement, shall continue in full force and effect.

This consent shall be governed by, and construed in accordance with, the laws of the State of New York, without reference to the conflicts of law provisions thereof.

Very truly yours,

NATIONAL HOCKEY LEAGUE

By: _____

     David Zimmerman, Esq.
     Executive Vice President and
     General Counsel

ACKNOWLEDGED AND AGREED TO
AS OF _____ ____, 2008:

DALLAS STARS, L.P.

By:  HSG Partnership Holdings LLC, its Managing Partner

    By: _____
       Name:
       Title:

MONARCH MASTER FUNDING LTD

By: Monarch Alternative Capital LP
Its: Advisor

    By: _____
       Name:   Christopher Santana
       Title:   Managing Principal

Based solely upon and in reliance on the representations, warranties, covenants and agreements set forth herein and in the Letter Agreement, the NHL hereby consents to the parties entering into the Assignment Agreement.

This consent is limited solely for the purposes and to the extent expressly set forth herein, shall be effective on the date hereof, and the terms and conditions of the Letter Agreement, shall continue in full force and effect.

This consent shall be governed by, and construed in accordance with, the laws of the State of New York, without reference to the conflicts of law provisions thereof.

Very truly yours,

NATIONAL HOCKEY LEAGUE

By: _____
     David Zimmerman, Esq.
     Executive Vice President and
     General Counsel

ACKNOWLEDGED AND AGREED TO
AS OF March 26, 2009

DALLAS STARS, L.P.

By: HSG Partnership Holdings LLC, its Managing Partner

By: _____
     Name: Kellie Fischer
     Title: Executive Vice President

MONARCH MASTER FUNDING LTD

By: Monarch Alternative Capital LP
Its: Advisor

By: _____
     Name: Christopher Santana
     Title: Managing Principal



By: _____
Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: _Sharon Bosch_____
Name: Sharon Bosch
Title:
          Authorized Signatory

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ███████████ (the "Assignor") and Monarch Master Funding Ltd (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:                    ███████████

2. Assignee:                    Monarch Master Funding Ltd

3. Borrower(s):                 HICKS SPORTS GROUP LLC

4. Administrative Agent:        JPMORGAN CHASE BANK, N.A., as administrative agent under the Credit Agreement.

5. Credit Agreement:           The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among HICKS SPORTS GROUP LLC ("Company"), HICKS SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, JPMORGAN CHASE BANK, N.A., as administrative agent, and the other agents parties thereto.

6.  Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| Term Loan | USD 350,000,000.00 | USD 4,000,000.00 | 1.142857143% |

Effective Date:    March 26, 2009

---

* Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

By:

Name:

Title:    Associate Director

ASSIGNEE

MONARCH MASTER FUNDING LTD, as Assignee

By: Monarch Alternative Capital LP, as its advisor

By:

Name:

Title:

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

By: _____

Name:

Title:

ASSIGNEE

MONARCH MASTER FUNDING LTD, as Assignee

By: Monarch Alternative Capital L.P., as its advisor

By: _____

Name:   Christopher Santana

Title:   Managing Principal

607246 - 001                                                    3

Consented to and Accepted:

JPMORGAN CHASE BANK, N.A., as Administrative Agent

By:        *Sharon Bosch*

Name:      Sharon Bosch

Title:     Authorized Signatory

Consented to:

HICKS SPORTS GROUP LLC

By:        *Kellie Fischer*

Name:      Kellie Fischer

Title:     Executive Vice President

GOLDMAN SACHS CREDIT PARTNERS L.P.

By:        N/A
           _____

Name:

Title:

607246 · 01

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.   Representations and Warranties.

1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2    Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of commercial lending and has capital and surplus and undivided profits of at least $250,000,000**; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

_____

**  This representation and warranty to be given only if the Assignee meets such requirements.  If the Assignee does not meet such requirements, then the effectiveness of this Assignment is, under the terms of the NHL Consent Letter, subject to consent of the NHL.

2.   Payments. All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1  Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.   General Provisions. This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

607246 - 001

# LSTA PAR/NEAR PAR TRADE CONFIRMATION

**To:**    **_Monarch Master Funding Ltd_**
      **_Attention:_**    **_Michael Gillin_**
      **_Phone No.:_**    **_(212) 554-1743_**
      **_Fax No.:_**    **_(866) 741-3564_**
      **_Email:_**    **_michael.gillin@monarchlp.com_**

**From:**    ▮▮▮▮▮▮▮▮▮▮▮
      **_Attention:_**
      **_Phone No.:_**
      **_Fax No.:_**
      **_Email:_**

**Date:**    **_12/02/2008_**

      We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of December 1, 2006, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

**Trade Date:**    11/24/2008

**Seller:**    ▮▮▮▮▮▮▮▮▮▮    ☑ Principal  ☐ Agent

**Buyer:**    Monarch Master Funding Ltd    ☑ Principal  ☐ Agent

**Credit Agreement:**    Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent.

**Borrower:**    Hicks Sports Group LLC

**Form of Purchase:**    Assignment

**Purchase Amount/ Type of Debt:**

| Purchase Amount | Type of Debt | Facility | CUSIP Number |
|---|---|---|---|
| USD 5,000,000.00 | Term | Term Loan | |

612164001

LSTA EFFECTIVE December 2006  Copyright © LSTA 2006.  All rights reserved.

**Purchase Rate:**  ████████  Term Loan

**Up Front Fees:**  ████████████
**(if any):**

**Credit Documentation**  No
**to be provided:**

**Trade Specific**
**Other Terms of Trade:**  ████████████████████████████████

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com

If you have any questions, please contact Lisa Hofle at 845-639-4806.

████████████

**Monarch Master Funding Ltd**
**By: Monarch Alternative Capital LP**
**Its: Advisor**

By: ████████████████████

Name: ████████

Title:  Associate

By: _____

Name:

Title:

612164001

LSTA EFFECTIVE December 2006  Copyright © LSTA 2006.  All rights reserved.

| Purchase Amount/ Type of Debt: | Purchase Amount | Type of Debt | Facility | CUSIP Number |
|---|---|---|---|---|
| | USD 5,000,000.00 | Term | Term Loan | |

**Purchase Rate:**  ▓▓▓▓▓▓    Term Loan

**Up Front Fees:** ▓▓▓▓▓▓▓
**(if any):**

**Credit Documentation**    No
**to be provided:**

**Trade Specific**
**Other Terms of Trade:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Please provide the signature of a duly authorized officer or other signatory where indicated below and return
this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email
address: lisa.hofle@fnis.com
If you have any questions, please contact Lisa Hofle at 845-639-4806.

▓▓▓▓▓▓▓▓                                Monarch Master Funding Ltd
                                        By: Monarch Alternative Capital LP, as its advisor


By: _____            By: _____
    Name:                                  Name: **Christopher Santana**
    Title:                                 Title: **Managing Principal**

LSTA EFFECTIVE DECEMBER 2006  Copyright © LSTA 2006.  All rights reserved.

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ▮▮▮▮▮▮▮▮ (the "Assignor") and Monarch Master Funding Ltd (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex I attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor:               ▮▮▮▮▮▮▮▮▮▮

2.  Assignee:               Monarch Master Funding Ltd

3.  Borrower(s):            HICKS SPORTS GROUP LLC

4.  Administrative Agent:   JPMORGAN CHASE BANK, N.A., as administrative agent under the Credit Agreement.

5.  Credit Agreement:      The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among HICKS SPORTS GROUP LLC ("Company"), HICKS SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, JPMORGAN CHASE BANK, N.A., as administrative agent, and the other agents parties thereto.

6.   Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| Term Loan | USD 350,000,000.00 | USD 10,500,000.00 | 3.000000000% |

Effective Date:          March 31, 2009

---

* Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

612164

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

By: _____

Name:

Title:     Vice President

ASSIGNEE

**MONARCH MASTER FUNDING LTD, as Assignee**

By: Monarch Alternative Capital LP
Its: Advisor


By: _____

Name:

Title:

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR ███████████████████

By: _____

Name:

Title:

ASSIGNEE

**MONARCH MASTER FUNDING LTD, as Assignee**

By: Monarch Alternative Capital LP, as its advisor

By: _____

Name: Christopher Santana

Title: Managing Principal

Consented to and Accepted:

**JPMORGAN CHASE BANK, N.A., as Administrative Agent**

By: _____

Name:  Dorian Herrera
Title:


Consented to:

**HICKS SPORTS GROUP LLC**


By: _____N/A_____

Name:
Title:


**GOLDMAN SACHS CREDIT PARTNERS L.P.**


By: _____N/A_____

Name:
Title:

ANNEX 1

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.  Representations and Warranties.

1.1     Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other  instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2     Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of commercial lending and has capital and surplus and undivided profits of at least $250,000,000**; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

** This representation and warranty to be given only if the Assignee meets such requirements.  If the Assignee does not meet such requirements, then the effectiveness of this Assignment is, under the terms of the NHL Consent Letter, subject to consent of the NHL.

2.   Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1  Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.   General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

# LSTA PAR/NEAR PAR TRADE CONFIRMATION

**To:**  ***Monarch Master Funding Ltd***
  *Attention:*  ***Michael Gillin***
  *Phone No.:*  ***(212) 554-1743***
  *Fax No.:*  ***(866)741-3564***
  *Email:*  ***michael.gillin@monarchlp.com***

**From:**  ▮▮▮▮▮▮▮
  *Attention:*
  *Phone No.:*
  *Fax No.:*
  *Email:*

**Date:**  *12/03/2008*

      We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of December 1, 2006, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below.  The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding.  Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date:** | 12/01/2008 |
| **Seller:** | ▮▮▮▮▮▮▮   ☑ Principal  ☐ Agent |
| **Buyer:** | Monarch Master Funding Ltd   ☑ Principal  ☐ Agent |
| **Credit Agreement:** | Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent. |
| **Borrower:** | Hicks Sports Group LLC |
| **Form of Purchase:** | Assignment |

613872001

LSTA EFFECTIVE DECEMBER 2006  Copyright © LSTA 2006.  All rights reserved.

**Purchase Rate:**                        ▮▮▮        Term Loan

**Up Front Fees:**   ▮▮▮▮▮▮▮▮
**(if any):**

**Credit Documentation**        No
**to be provided:**

**Trade Specific**
**Other Terms of Trade:**   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com
If you have any questions, please contact Lisa Hofle at 845-639-4806.



▮▮▮▮▮▮                                    Monarch Master Funding Ltd
                                          By: Monarch Alternative Capital LP
                                          Its: Advisor

By:  _____              By:  _____

    Name: ▮▮▮▮▮                               Name:
    Title:   Associate                         Title:

LSTA EFFECTIVE December 2006  Copyright © LSTA 2006.  All rights reserved.

| Purchase Amount/ Type of Debt: | Purchase Amount | Type of Debt | Facility | CUSIP Number |
|---|---|---|---|---|
| | USD 5,500,000.00 | Term | Term Loan | |

**Purchase Rate:**          ▮▮▮▮          Term Loan

**Up Front Fees:**          ▮▮▮▮▮
**(if any):**

**Credit Documentation**          No
**to be provided:**

**Trade Specific**          ▮▮▮▮▮▮▮▮▮▮▮▮
**Other Terms of Trade:**

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com

If you have any questions, please contact Lisa Hofle at 845-639-4806.

▮▮▮▮▮▮

 

    Monarch Master Funding Ltd
    By: Monarch Alternative Capital LP, as its advisor

By: _____          By: _____
    Name:                                                    Name: **Christopher Santana**
    Title:                                                       Title: **Managing Principal**

613872001                                    Page 2 of 2

LSTA EFFECTIVE DECEMBER 2006  Copyright © LSTA 2006.  All rights reserved.

## LSTA PAR/NEAR PAR TRADE CONFIRMATION

**To:** **Monarch Master Funding Ltd**
      *Attention:*     **Michael Gillin**
      *Phone No.:*    **(212) 554-1743**
      *Fax No.:*      **(866)741-3564**
      *Email:*        **michaeLgillin@monarchlp.com**

**From:** ██████████
      *Attention:*
      *Phone No.:*
      *Fax No.:*
      *Email:*

**Date:** **12/05/2008**

      We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of December 1, 2006, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | | |
|---|---|---|
| **Trade Date:** | 12/03/2008 | |
| **Seller:** | ██████████ | ☑ Principal ☐ Agent |
| **Buyer:** | Monarch Master Funding Ltd | ☑ Principal ☐ Agent |

**Credit Agreement:**     Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent.

**Borrower:**     Hicks Sports Group LLC

**Form of Purchase:**     Assignment

615178001

LSTA EFFECTIVE DECEMBER 2006  Copyright © LSTA 2006. All rights reserved.

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ██████████ (the "Assignor") and Monarch Master Funding Ltd (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor:                    ██████████████

2.  Assignee:                    Monarch Master Funding Ltd

3.  Borrower(s):                 HICKS SPORTS GROUP LLC

4.  Administrative Agent:        JPMORGAN CHASE BANK, N.A., as administrative agent under the Credit Agreement.

5.  Credit Agreement:           The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among HICKS SPORTS GROUP LLC ("Company"), HICKS SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, JPMORGAN CHASE BANK, N.A., as administrative agent, and the other agents parties thereto.

6.  Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| Term Loan | USD 350,000,000.00 | USD 4,500,000.00 | 1.285714286% |

Effective Date:        March 31, 2009

---

\* Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

# LSTA PAR/NEAR PAR TRADE CONFIRMATION

*To:*     ***Monarch Master Funding Ltd***
          *Attention:*       ***Michael Gillin***
          *Phone No.:*       *(212) 554-1743*
          *Fax No.:*         *(866) 741-3564*
          *Email:*           *michael.gillin@monarchlp.com*
          *Address:*         *535 Madison Avenue, 17th Floor, New York, NY 10022*

*From:*   ▮▮▮▮▮▮▮▮▮▮▮▮▮
          *Attention:*
          *Phone No.:*
          *Fax No.:*
          *Email:*
          *Address:*

*Date:*   *09/04/2009*

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of February 6, 2009, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date:** | 08/26/2009 |
| **Seller:** | ▮▮▮▮▮▮▮▮▮▮   ☑ Principal  ☐ Agent |
| **Buyer:** | Monarch Master Funding Ltd   ☑ Principal  ☐ Agent |
| **Credit Agreement:** | Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent. |
| **Borrower:** | Hicks Sports Group LLC |
| **Form of Purchase:** | Assignment |

724009001

LSTA EFFECTIVE February 2009  Copyright © LSTA 2009.  All rights reserved.

| | Purchase Amount | Type of Debt | Facility | CUSIP Number |
|---|---|---|---|---|
| Purchase Amount/ Type of Debt: | USD 2,000,000.00 | Term | Term Loan | 84522UAB2 |

**Purchase Rate:**              ████████      Term Loan

**Up Front Fees:** ████████
**(if any):** ....

**Credit Documents**         ' No
**to be provided:**
                                      .
                                      ▪

**Trade Specific**         ████████
**Other Terms of Trade:** ████████████████████████

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com

If you have any questions, please contact Lisa Hofle at 845-639-4806.



Monarch Master Funding Ltd
By: Monarch Alternative Capital LP
Its: Advisor

By: _____                    By: _____

Name: ████                              Name: **Christopher Santana**
Title: ████████                           Title: **Managing Principal**

LSTA EFFECTIVE February 2009  Copyright © LSTA 2009. All rights reserved.

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ███████████ (the "Assignor") and Monarch Master Funding Ltd (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:              ███████████

2. Assignee:              Monarch Master Funding Ltd

3. Borrower(s):           HICKS SPORTS GROUP LLC

4. Administrative Agent:  JPMORGAN CHASE BANK, N.A., as administrative agent under the Credit Agreement.

5. Credit Agreement:      The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among HICKS SPORTS GROUP LLC ("Company"), HICKS SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, JPMORGAN CHASE BANK, N.A., as administrative agent, and the other agents parties thereto.

6.  Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment / Loans for all Lenders | Amount of Commitment / Loans Assigned | Percentage Assigned of Commitment / Loans* |
|---|---|---|---|
| Term Loan | USD 350,000,000.00 | USD 2,000,000.00 | 0.571428571% |

Effective Date:          September 14, 2009

---

* Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By: _____

Name: _____

Title:    Assistant Vice President

ASSIGNEE

**MONARCH MASTER FUNDING LTD, as Assignee**

By: Monarch Alternative Capital LP

Its: Advisor


By:      _____

Name:

Title:

Consented to and Accepted:

**JPMORGAN CHASE BANK, N.A., as Administrative Agent**

By: _____

Name:    Dorian Herrera
Title:

Consented to:

**HICKS SPORTS GROUP LLC**

By:     **N/A**
      _____

Name:
Title:

**GOLDMAN SACHS CREDIT PARTNERS L.P.**

By:     **N/A**
      _____

Name:
Title:

ANNEX 1

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.   Representations and Warranties.

1.1      Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2      Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of commercial lending and has capital and surplus and undivided profits of at least $250,000,000**; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

** This representation and warranty to be given only if the Assignee meets such requirements. If the Assignee does not meet such requirements, then the effectiveness of this Assignment is, under the terms of the NHL Consent Letter, subject to consent of the NHL.

2.    Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1  Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.    General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By:        _____

Name:      �manual

Title:     Assistant Vice President

ASSIGNEE

**MONARCH MASTER FUNDING LTD, as Assignee**

By: Monarch Alternative Capital LP
Its: Advisor

By:        _____

Name:      **Christopher Santana**

Title:     **Managing Principal**



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

---

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for Distressed Trades published by the LSTA as of February 6, 2009 (the "Standard Terms"). The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through I below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement for Distressed Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | **September 16, 2009** |
| Agreement Date: | **November 18, 2009** |
| Seller: | ▓▓▓▓▓▓▓▓▓▓▓▓ |
| Buyer: | **Monarch Master Funding Ltd** |
| Credit Agreement: | **Amended and Restated First Lien Credit and Guaranty Agreement dated as of December 19, 2006 among Hicks Sports Group LLC, Hicks Sports Group Holdings LLC, certain subsidiaries of Hicks Sports Group LLC, as Guarantors, the Lenders from time to time parties thereto, JPMorgan Securities Inc., as Joint Lead Arranger, Joint Bookrunner and Co-Syndication Agent, Barclays Capital Inc., as Joint Lead Arranger and Joint Bookrunner, Barclays Bank PLC, as Co-Syndication Agent, and JPMorgan Chase Bank, N.A. as Administrative Agent and Collateral Agent** |
| Borrower: | **Hicks Sports Group LLC** |
| Purchase Amount(s): | **(i) $17,000,000.00**<br>**(ii) $5,775,529.62** |
| Tranche(s): | **(i) Term Loan**<br>**(ii) Revolving Commitment** |
| CUSIP Number(s), if available: | **(i) 84522UAB2**<br>**(ii) 84522UAC0** |
| Pre-Settlement Date Accruals Treatment: | ☐ **Settled Without Accrued Interest**<br>☒ **Trades Flat** |
| Type of Assignment: | ☐ **Original Assignment**<br>☒ **Secondary Assignment** |
| Immediate Prior Seller (if any): | ▓▓▓▓▓▓▓▓▓▓▓ |

LSTA EFFECTIVE September 11, 2009      Copyright © LSTA 2009. All rights reserved.
DC1 1552954v.1

| | | | |
|---|---|---|---|
| Borrower in Bankruptcy: | Yes ☐ | No ☒ | |
| Delivery of Credit Documents: | Yes ☐ | No ☒ | |
| Netting Arrangements: | Yes ☐ | No ☒ | |
| Flip Representations: | Yes ☐¹ | | No ☒ |
| Step-Up Provisions: | Yes ☐¹ | No ☒ | |
| | Shift Date²: | N/A | |
| Transfer Notice | Yes ☐³ | No ☒ | |

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means JPMorgan Chase Bank, N.A..

"Assignment" means the Assignment and Assumption Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
☒ none.
☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
☒ none.

---

¹ The Parties cannot specify "Yes" to both "Flip Representations" and "Step-Up Provisions" unless they set forth appropriate modifications in Section I.  Neither "Flip Representations" nor "Step-Up Provisions" applies to original assignments.

² Specify a Shift Date only if "Yes" is specified opposite "Step-Up Provisions" and if the second box is selected in the definition of Covered Prior Seller.  The Shift Date is the date that the Parties agree is the closest possible approximation for when the market convention for transferring the Loans and Commitments (if any) shifted from a par/near par documentation basis to a distressed documentation basis.  In consulting as to the appropriate date, the Parties may refer to published results of an anonymous LSTA poll of dealers as to such dealers' views regarding the Shift Date or, if results have not been published with respect to the Credit Agreement, either Party may request in writing that the LSTA endeavor to conduct such a poll.  To initiate a poll, send a request that includes the name of Borrower and either the CUSIP number (if available) or the name and date of the Credit Agreement to the LSTA at lstashiftdatepolls@lsta.org.  The results of such LSTA polls are available to facilitate discussions between the Parties and have no binding effect.

³ "Yes" can be elected only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

☐ means [the United States Bankruptcy Court for the _____District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
☒ not applicable.
☐ none has been set.
☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☐ none.
☒ means Revolving Commitment in the principal amount of $5,775,529.58 of which $5,688,666.63 consists of principal amount of Revolving Loans and $86,862.95 principal amount of Unfunded Commitments.

"Covered Prior Seller" select one:
☒ not applicable.
☐ means each Prior Seller that transferred the Loans and Commitments (if any)[4] on or after the Shift Date [but prior to the transfer pursuant to which _____[5] transferred such Loans and Commitments (if any) on a distressed documentation basis pursuant to the Purchase and Sale Agreement for Distressed Trades dated as of _____, as set forth in the Annex].[6]

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" Term Loans in the outstanding principal amount of $17,000,000.00 and Revolving Loans in the outstanding principal amount of $5,688,666.67.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.

---

[4] If applicable to only a portion of the Loans and Commitments (if any), specify the portion that applies, e.g., "each Prior Seller that transferred the [Name of applicable Covered Prior Seller] Loans (as defined in Section 1 of the Annex)."
[5] Specify the first Entity that transferred the Loans and Commitments (if any) on a distressed documentation basis on or after the Shift Date.
[6] The bracketed language applies where the relevant Predecessor Transfer Documents include a distressed trade that settled after the par/near par trade which settled on or after the Shift Date.

DC1 1552954v.1

3

☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means notice to the Agent and the Borrower.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500.00 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means that part of the Commitments that has not been funded in the form of loans, advances, letter of credit disbursements or otherwise under the Credit Agreement, which is in the principal amount of $86,862.95 and consists of issued and undrawn letters of credit.

## B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

|  | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
|  | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |

| and Waivers) | | | |
|---|---|---|---|
| Section 4.1(u) (<u>Other Documents</u>) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (<u>Proof of Claim</u>) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (<u>Purchase Price</u>); <u>Netting Arrangements</u>.
 If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

 "(k) [intentionally omitted]."[7]

Section 4.1(r) (<u>Predecessor Transfer Agreements</u>).
 ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
 ☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
 ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.
 ☐ not applicable.

Section 4.1(u) (<u>Other Documents</u>).
 ☒ None.
 ☐ The following: _____.

Section 4.1(v) (<u>Proof of Claim</u>).
 ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
  ☐ the Agent on behalf of the Lenders.
  ☐ Seller or a Prior Seller.
 ☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
 ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
 ☒ not applicable.

**C.** **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1** Section 5.1(n) (<u>Buyer Status</u>). [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

 ☐ Buyer is not a Lender.
 ☒ Buyer is a Lender.
 ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
 ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

---

[7]Seller should add, and Buyer should cause Original Buyer or Penultimate Buyer, as applicable, to add, a comparable representation to the Netting Letter in lieu of this representation.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.**    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.**    **SECTION 7 (COSTS AND EXPENSES)**

☒    The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☒ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐    The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.
☐    The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☐    The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐    There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**    **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**    Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**    Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Chase Manhattan Bank, N.Y.
ABA# 021-000-021
A/C Name: Monarch Master Funding Ltd
A/C# 739-152-610
Ref: Hicks

DC1 1552954v.1

6

<u>Seller's Wire Instructions:</u>

Pay to:
ABA No.
For Credit to.:
Ref.:
Attn.:
Name:

**G.      SECTION 9 (NOTICES)**

<u>Buyer's Address for Notices and Delivery:</u>

**Administrative/ Credit  Contact:**
Michael Gillin
C/O Monarch Alternative Capital LP
535 Madison Avenue
New York  NY 10022
Email:  michael.gillin@monarchlp.com
Phone: (212) 554-1743
Fax: 1-(866)-741-3564

**CC Copy to**:  Documentation on all Trades
Nirmala Matai
Fax:  (212) 339-0945
Email:  monarch@imsi.com

<u>Seller's Address for Notices and Delivery:</u>



**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

By:_____
    Name:
    Title:


By:_____
    Name:
    Title:

**BUYER**

**MONARCH MASTER FUNDING LTD**

**By:  Monarch Alternative Capital LP**
**its:  Advisor**


By:_____
    Name:
    Title:

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

By:_____
     Name:
     Title:

By:_____
     Name:
     Title:

**BUYER**

**MONARCH MASTER FUNDING LTD**

**By: Monarch Alternative Capital LP**
**Its: Advisor**



By:_____
     Name:
     Title:    Michael A. Weinstock
            Managing Principal

## ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[8] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    Purchase and Sale Agreement dated as of November 6, 2009 between ▮▮▮▮▮▮▮▮▮▮ as seller and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ , as buyer, and the related Assignment and Assumption Agreement [distressed]s

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None

3.  Description of Proof of Claim (if any).[9]  N/A

4.  Description of Adequate Protection Order (if any).[2]  N/A

5.  List any exceptions to Section 4.1(w) (Notice of Impairment).  N/A

6.  The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is $0.00.

---

[8] List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

[9] May apply only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

LSTA EFFECTIVE September 11, 2009    Copyright © LSTA 2009. All rights reserved.

DC1 1552954v.1

November 18 2009

Ladies and Gentlemen:

Reference is hereby made to: (i) that certain Assignment and Assumption Agreement, dated as of November __, 2009 attached hereto (the "Assignment Agreement"), between ▮▮▮▮▮▮▮▮▮ as assignor (the "Assignor"), and **Monarch Master Fund Ltd.**, as assignee (the "Assignee"), and (ii) that certain Letter Agreement, dated December 19, 2006 (the "Letter Agreement"), among JPMorgan Chase Bank, N.A., as administrative agent and collateral agent under the First Lien Operative Documents (as defined in the Letter Agreement), Barclays Bank PLC, as administrative agent and collateral agent under the Second Lien Operative Documents (as defined in the Letter Agreement), Dallas Stars, L.P., a Delaware limited partnership doing business as the Dallas Stars, Hicks Sports Group LLC (f/k/a Southwest Sports Group LLC), a Texas limited liability company, Hicks Sports Group Holdings LLC (f/k/a Southwest Sports Group Holdings LLC), a Texas limited liability company, HSG Partnership Holdings LLC (f/k/a SSG Partnership Holdings LLC), a Texas limited liability company, Texas Rangers Baseball Partners, a Texas general partnership, Emerald Diamond, L.P., a Texas limited partnership, Dallas Arena LLC, a Texas limited liability company, Dallas Stars U.S. Holdings Corp, a Delaware corporation, StarCenters LLC, a Texas limited liability company, Southwest Sports Television, L.P., a Texas limited partnership, and Southwest Sports Group Baseball, L.P., a Texas limited partnership, the National Hockey League (the "NHL,") and the other parties thereto. Capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Letter Agreement. You have asked for the NHL's written consent to the parties entering into the Assignment Agreement.

You represent, warrant and covenant that the Assignment Agreement attached hereto is a true, correct and complete copy thereof. The Assignee further represents, warrants and covenants that it is an Eligible Assignee (as defined in the First Lien Credit Agreement) under the First Lien Credit Agreement. The Assignor further represents, warrants and covenants that it has provided notice of the Assignment Agreement to the Borrower and JPMCB, as required under the First Lien Credit Agreement. The Assignee represents, warrants and covenants that it has been provided with a copy of the Letter Agreement, and understands that the Letter Agreement affects certain rights of, and imposes certain obligations on, the Lenders under the Credit Agreement. The Assignee hereby agrees that upon its acceptance of the assignment hereunder, it shall be bound in all respects by each term and condition of the Letter Agreement applicable to the Assignee as a Lender thereunder as fully as though it was a signatory to such Letter Agreement itself and further acknowledges, understands and agrees that, and notwithstanding anything in the Assignment Agreement or any other Operative Document: (a) the exercise by any Agent and/or any Lender of remedies under any Operative Document will be made in accordance with the terms and conditions of the Letter Agreement, the terms and conditions of which the Assignor and each Assignee have each accepted as reasonable and appropriate, and (b) as between the Agents and the Lenders on one hand and the NHL on the other, in the event of any conflict or inconsistency between the terms and conditions of the Letter Agreement and the terms and conditions of any Operative Document (including without limitation the Assignment Agreement), the terms and conditions of the Letter Agreement will control. The Assignee hereby authorizes the Agents to perform on its behalf the Letter Agreement and to execute, deliver and perform all amendments, modifications, extensions, waivers and other acts in connection with the Letter Agreement as the Agents shall deem appropriate, and all third parties shall be entitled to rely on the Agents' taking of any such action or execution of any such document as conclusive evidence of its authority to do so.

Based solely upon and in reliance on the representations, warranties, covenants and agreements set forth herein and in the Letter Agreement, the NHL, hereby consents to the parties entering into the Assignment Agreement.

This consent is limited solely for the purposes and to the extent expressly set forth herein, shall be effective on the date hereof, and the terms and conditions of the Letter Agreement, shall continue in full force and effect.

This consent shall be governed by, and construed in accordance with, the laws of the State of New York, without reference to the conflicts of law provisions thereof.

DC1 1587798 1

Very truly yours,

NATIONAL HOCKEY LEAGUE

By: _____

David Zimmerman, Esq.
Executive Vice President and
General Counsel

ACKNOWLEDGED AND AGREED TO
AS OF November ⸬, 2009:

BY: ████████████████████

By: ████████████████
    Name:
    Title:

By: ████████████████
    Name:
    Title:

MONARCH MASTER FUNDING LTD

By: Monarch Alternative Capital LP
Its: Advisor

By: _____
    Name:
    Title:

OC1 1553759v 1                           - 2 -

Very truly yours,

NATIONAL HOCKEY LEAGUE

By: _____
    David Zimmerman, Esq.
    Executive Vice President and
    General Counsel

ACKNOWLEDGED AND AGREED TO
AS OF November __, 2009:

BY:

    By: _____
        Name:
        Title:

    By: _____
        Name:
        Title:

MONARCH MASTER FUNDING LTD

By:  Monarch Alternative Capital LP
Its:  Advisor

    By: _____
        Name:
        Title:

DC1 15537596 1

Very truly yours,

NATIONAL HOCKEY LEAGUE

By: _____
    David Zimmerman, Esq.
    Executive Vice President and
    General Counsel

ACKNOWLEDGED AND AGREED TO
AS OF November __, 2009:

BY: ████████████

    By: _____
        Name:
        Title:

    By: _____
        Name:
        Title:

MONARCH MASTER FUNDING LTD

By: Monarch Alternative Capital LP
Its: Advisor

    By: _____
        Name:   Michael A. Weinstock
        Title:   Managing Principal

DC1 1353250v.2

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "**Assignment**") is dated as of the Effective Date set forth below and is entered into by and between ▮▮▮▮▮▮▮▮ (the "**Assignor**") and Monarch Master Funding Ltd (the "**Assignee**"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex I attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "**Assigned Interest**"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

| | | |
|---|---|---|
| 1. | Assignor: | ▮▮▮▮▮▮▮▮ |
| 2. | Assignee: | Monarch Master Funding Ltd |
| 3. | Borrower(s): | **HICKS SPORTS GROUP LLC** |
| 4. | Administrative Agent: | **JPMORGAN CHASE BANK, N.A.**, as administrative agent under the Credit Agreement. |
| 5. | Credit Agreement: | The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among **HICKS SPORTS GROUP LLC** ("Company"), **HICKS SPORTS GROUP HOLDINGS LLC** and **CERTAIN SUBSIDIARIES OF THE COMPANY**, as Guarantors, the lenders party thereto, **JPMORGAN CHASE BANK, N.A.**, as administrative agent, and the other agents parties thereto. |

6.    Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment/Loans for all Lenders | Amount of Commitment/Loans Assigned | Percentage Assigned of Commitment/Loans[1] |
|---|---|---|---|
| Revolving Commitment | $61,880,674.50 | $5,775,529.62 | 9.3333333% |
| Term Loan | $350,000,000.00 | $17,000,000.00 | 4.857142857% |

Effective Date: November 18, 2009

7.    Notice and Wire Instructions:

██████████████████                          Monarch Master Funding Ltd

Notices:                                     Notices:

ON FILE WITH THE AGENT                       ON FILE WITH THE AGENT
_____                      _____
Attention:                                   Attention:
Telecopier:                                  Telecopier:

with a copy to:                              with a copy to:

_____                      _____
_____                      _____
Attention:                                   Attention:
Telecopier:                                  Telecopier:

Wire Instructions:                           Wire Instructions:

ON FILE WITH THE AGENT                       ON FILE WITH THE AGENT

---

[1] Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By:

By: _____
Title: _____

By: _____
Title: _____

ASSIGNEE
**MONARCH MASTER FUNDING LTD, as
Assignee**

By:  Monarch Alternative Capital LP
Its:  Advisor

By: _____
Title: _____

Consented to and Accepted:

**JPMORGAN CHASE BANK, N.A.,**
as Administrative Agent

By: _____
Title: _____

Consented to:

**HICKS SPORTS GROUP LLC**

By: _____
Title: _____

CX/1 2583273v 1

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

███████████████████████████████

By: ██████████████████████████

By: _____
     Title:

By: _____
     Title:

ASSIGNEE
**MONARCH MASTER FUNDING LTD, as
Assignee**

By:  Monarch Alternative Capital LP
Its:  Advisor

By: _____
     Title:    **Michael A. Weinstock
           Managing Principal**

Consented to and Accepted:

**JPMORGAN CHASE BANK, N.A.,**
   as Administrative Agent

By: _____
     Title:

Consented to:

**HICKS SPORTS GROUP LLC**

By: _____
     Title:

DC1 1583273v 1

ANNEX I

## STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
## AND ASSUMPTION AGREEMENT

1. <u>Representations and Warranties</u>.

    1.1    <u>Assignor</u>. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "**Credit Documents**"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

    1.2    <u>Assignee</u>. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent Letter, (vi) if it is a Non-US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of

commercial lending and has capital and surplus and undivided profits of at least $250,000,000; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.    Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1    With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2    With respect to Assigned Interests for Revolving Loans, from and after the Effective Date, the Administrative Agent(s) shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

3.    General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.



November 18, 2009

Monarch Master Funding Ltd
c/o Monarch Alternative Capital LP
535 Madison Avenue
New York  NY 10022

Re:     Amended and Restated First Lien Credit and Guaranty Agreement dated as of December 19, 2006
among Hicks Sports Group LLC, Hicks Sports Group Holdings LLC, certain subsidiaries of
Hicks Sports Group LLC, as Guarantors, the Lenders from time to time parties thereto, JPMorgan
Securities Inc., as Joint Lead Arranger, Joint Bookrunner and Co-Syndication Agent, Barclays
Capital Inc., as Joint Lead Arranger and Joint Bookrunner, Barclays Bank PLC, as Co-
Syndication Agent, and JPMorgan Chase Bank, N.A. as Administrative Agent and Collateral
Agent

Ladies and Gentlemen:

Reference is hereby made to the Purchase and Sale Agreement dated as of the date hereof (the
"Agreement") between ███████████████ ("Seller") and Monarch Master Funding Ltd ("Buyer")
relating to Seller's assignment to Buyer of its right, title and interest in certain loans made to Hicks Sports
Group LLC. Capitalized terms used herein without definition shall have the respective meanings ascribed
to them in the Agreement. This letter is the Purchase Price Letter referred to in the Agreement.

This letter confirms that the Purchase Price to be paid by Buyer to Seller under the Agreement is
calculated as follows in the attached spreadsheet.

The Purchase Price shall be paid by Buyer to Seller by wire transfer of immediately available
funds according to the following wire transfer instructions:

Pay to:
ABA No.
For Credit to:
Reference:
Attention of:



To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,



By:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

Acknowledged and Agreed:

MONARCH MASTER FUNDING LTD

By:  Monarch Alternative Capital LP
Its:  Advisor

By: _____
Name:
Title:

DC1 158411 1v.1

To indicate your agreement with the foregoing, please execute and return this letter to the undersigned.

Sincerely,

By: ████████████████

By: _____
    Name:
    Title:


By: _____
    Name:
    Title:


Acknowledged and Agreed:

MONARCH MASTER FUNDING LTD

By: Monarch Alternative Capital LP
Its: Advisor

By: _____
Name:   Michael A. Weinstock
Title:  Managing Principal

**REDACTED**

**REDACTED**

# LSTA PAR/NEAR PAR TRADE CONFIRMATION

**To:**    *Monarch Master Funding Ltd*
    *Attention:*    *Michael Gillin*
    *Phone No.:*    *(212) 554-1743*
    *Fax No.:*    *(866)741-3564*
    *Email:*    *michael.gillin@monarchlp.com*
    *Address:*    *535 Madison Avenue, 17th Floor, New York, NY 10022*

**From:**    ▉▉▉▉▉▉▉▉
    *Attention:*
    *Phone No.:*
    *Fax No.:*
    *Email:*
    *Address:*

**Date:**    09/29/2009

        We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of February 6, 2009, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

**Trade Date:**    09/24/2009

**Seller:**    ▉▉▉▉▉▉▉    ☑ Principal ☐ Agent

**Buyer:**    Monarch Master Funding Ltd    ☑ Principal ☐ Agent

**Credit Agreement:**    Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent.

**Borrower:**    Hicks Sports Group LLC

**Form of Purchase:**    Assignment

735320001

LSTA EFFECTIVE February 2009  Copyright © LSTA 2009.  All rights reserved.

| Purchase Amount/<br>Type of Debt: | Purchase<br>Amount | Type of<br>Debt | Facility | CUSIP<br>Number |
|---|---|---|---|---|
| | USD 5,000,000.00 | Term | Term Loan | 84522UAB2 |

Purchase Rate: ████████ Term Loan

Up Front Fees:
(if any): ████████████

Credit Documents        No
to be provided:

Trade Specific
Other Terms of Trade: ████████████████████████

Please provide the signature of a duly authorized officer or other signatory where indicated below and return
this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email
address: lisa.hofle@fnis.com
If you have any questions, please contact Lisa Hofle at 845-639-4806.

████████████

Monarch Master Funding Ltd
By: Monarch Alternative Capital LP
Its: Advisor

By: ████████████████████

By: _____

Name: ████████████████        Name:  Christopher Santana
Title:  Vice President          Title:  Managing Principal

735J20001

LSTA EFFECTIVE February 2009  Copyright © LSTA 2009.  All rights reserved.

# LSTA PAR/NEAR PAR TRADE CONFIRMATION

*To:*   **Monarch Master Funding Ltd**

    *Attention:*    **Michael Gillin**
    *Phone No.:*   (212) 554-1743
    *Fax No.:*     (866) 741-3564
    *Email:*       *michael.gillin@monarchlp.com*
    *Address:*    **535 Madison Avenue, 17th Floor, New York, NY 10022**

*From:* ▓▓▓▓▓▓▓

    *Attention:*
    *Phone No.:*
    *Fax No.:*
    *Email:*
    *Address:* ▓▓▓▓▓▓▓▓▓▓

*Date:*

      We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of September 25, 2009, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration Between Loan Traders With Regard to Failed Trades" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date:** | 09/29/2009 |
| **Seller:** | ▓▓▓▓▓▓▓      ☑ Principal ☐ Agent |
| **Buyer:** | Monarch Master Funding Ltd      ☑ Principal ☐ Agent |
| **Credit Agreement:** | Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent. |
| **Borrower:** | Hicks Sports Group LLC |
| **Form of Purchase:** | Assignment |

738204001

LSTA EFFECTIVE September 2009  Copyright © LSTA 2009. All rights reserved

| Purchase Amount/ Type of Debt: | | | |
|---|---|---|---|
| Purchase Amount | Type of Debt | Facility | CUSIP Number |
| USD 6,000,000.00 | Term | Term Loan | 84522UAB2 |

**Purchase Rate:** ████         Term Loan

**Up Front Fees:** ████████
**(if any):**

**Credit Documents**         No
**to be provided:**

**Trade Specific**
**Other Terms of Trade:** ████████████████████████████████████

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com
If you have any questions, please contact Lisa Hofle at 845-639-4806.

████████████

Monarch Master Funding Ltd
By: Monarch Alternative Capital LP
Its: Advisor

By: _____

Name:
Title:

By: _____

Name: Christopher Santan
Title: Managing Principal

738204001                                                          Page 2 of 2

LSTA EFFECTIVE September 2009 Copyright © LSTA 2009   All rights reserved.

| **Purchase Amount/**<br>**Type of Debt:** | **Purchase Amount** | **Type of Debt** | **Facility** | **CUSIP Number** |
|---|---|---|---|---|
| | USD 6,000,000.00 | Term | Term Loan | 84522UAB2 |

**Purchase Rate:**                                    ⬛                Term Loan

**Up Front Fees:**            ⬛
**(if any):**

**Credit Documents**            No
**to be provided:**

**Trade Specific**
**Other Terms of Trade:**

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of Lisa Hofle at ClearPar at the following fax number (646)453-2870 or email address: lisa.hofle@fnis.com

If you have any questions, please contact Lisa Hofle at 845-639-4806.

Monarch Master Funding Ltd
By: Monarch Alternative Capital LP
Its: Advisor

By: _____          By: _____

Name:                                              Name:
Title:  Vice President                         Title:

LSTA EFFECTIVE September 2009  Copyright © LSTA 2009.  All rights reserved.



**PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

---

**TRANSACTION SPECIFIC TERMS**

THIS PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for Distressed Trades published by the LSTA as of September 25, 2009 (the "Standard Terms"). The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through I below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement for Distressed Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | October 29, 2009 |
| Agreement Date: | January 21, 2010 |
| Seller: | ████████████████ |
| Buyer: | **MONARCH MASTER FUNDING LTD** |
| Credit Agreement: | **AMENDED AND RESTATED FIRST LIEN CREDIT AND GUARANTY AGREEEMENT, dated as of December 19, 2006, by and among HICKS SPORTS GROUP LLC ("Company"), HICKS SPORTS GROUP HOLDINGS LLC ("Holdings"), and CERTAIN SUBSIDIARIES OF HICKS SPORTS GROUP LLC, as Guarantors, the Lenders from time to time party thereto, JPMORGAN CHASE BANK, N.A., as Administrative Agent and Collateral Agent.** |
| Borrower: | **HICKS SPORTS GROUP LLC** |
| Purchase Amount(s): | **1. $24,000,000.00 outstanding principal amount on Term Loans; and** |
| | **2. $11,551,059.24 outstanding principal amount on Revolving Commitment** |
| Tranche(s): | **1. Term Loan** |
| | **2. Revolving Commitment** |
| CUSIP Number(s), if available: | **1. N/A** |
| | **2. N/A** |
| Pre-Settlement Date Accruals Treatment: | ☐ Settled Without Accrued Interest<br>☒ **Trades Flat** |
| Type of Assignment: | ☒ **Original Assignment**<br>☐ Secondary Assignment |
| Immediate Prior Seller (if any): | **N/A** |
| Borrower in Bankruptcy: | Yes ☐      No ☒ |

LSTA EFFECTIVE September 25, 2009       Copyright © LSTA 2009.  All rights reserved.
4210858

| | | |
|---|---|---|
| **Delivery of Credit Documents:** | Yes ☐ | No ☒ |
| **Netting Arrangements:** | Yes ☐ | No ☒ |
| **Flip Representations:** | Yes ☐ | No ☒ |
| **Step-Up Provisions:** | Yes ☐ | No ☒ |
| | **Shift Date:** | **N/A** |
| **Transfer Notice** | Yes ☐ | No ☒ |

**A.    DEFINITIONS**

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means JPMorgan Chase Bank, N.A. as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
   ☒ none.
   ☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
   ☒ none.
   ☐ means [the United States Bankruptcy Court for the _____District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
   ☒ not applicable.
   ☐ none has been set.
   ☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
   ☒ not applicable.
   ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
   ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
   ☐ none.
   ☒ means the Revolving Commitments in the principal amount of $11,551,059.24, all of which is fully funded Revolving Loans.

"Covered Prior Seller" select one:

☒ not applicable.
☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the transfer pursuant to which _____ transferred such Loans and Commitments (if any) on a distressed documentation basis pursuant to the Purchase and Sale Agreement for Distressed Trades dated as of _____, as set forth in the Annex].

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means Term Loans in the outstanding principal amount of $24,000,000.00 and Revolving Loans in the outstanding principal amount of $11,551,059.28.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means notice of the Assignment to the Agent and the Borrower.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the $3,500 transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means none.

B.    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
        If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

Section 4.1(r) (Predecessor Transfer Agreements).
        ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
        ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
        ☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.
        ☒ not applicable.

Section 4.1(u) (Other Documents).
        ☒ None.
        ☐ The following: _____.

Section 4.1(v) (Proof of Claim).
  ☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
    ☐ the Agent on behalf of the Lenders.
    ☐ Seller or a Prior Seller.
  ☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy
Case and no Proof of Claim has been filed.
  ☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
  ☒ not applicable.

**C.**    **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**    Section 5.1(n) (Buyer Status).

  ☐ Buyer is not a Lender.
  ☒ Buyer is a Lender.
  ☐ Buyer is an Affiliate (as defined in the Credit Agreement) of a Lender.
  ☐ Buyer is an Approved Fund of a Lender.

**C.2**    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.**    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.**    **SECTION 7 (COSTS AND EXPENSES)**

☒ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
  ☒ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☐ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**   **SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

**F.1**   Section 8.2 (Distributions); Step-Up Distributions Covenant.

    (i)   If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

    (ii)   If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**   Section 8.4 (Wire Instructions).

Buyer's Wire Instructions:

Chase Manhattan Bank, N.Y.
ABA# 021-000-021
A/C Name: Monarch Master Funding Ltd
A/C# 739-152-610
Ref: Hicks Sports Group LLC



**G.**   **SECTION 9 (NOTICES)**

Buyer's Address for Notices and Delivery:

**Administrative/Credit Contact:**
C/O Monarch Alternative Capital LP
535 Madison Avenue, 26TH Floor
Attention: Michael Gillin
New York, NY 10022
Email: michael.gillin@monarchlp.com
Phone: 212-554-1743
Fax: 866-741-3564

**CC Copy to:**
Documentation on all Trades
Nirmala Matai
Fax: 212-339-0945
Email: monarch@imsi.com





**H.**     **SECTION 25 (JUDGMENT CURRENCY)**

The exchange rate used for the conversion of amounts in any currency other than the Contractual Currency into amounts in the Contractual Currency shall be determined by reference to quotations from (if no election is made, Seller shall provide the quotations):

☒  Seller, or if Seller does not quote a rate of exchange on such currency, by a known dealer in such currency designated by Seller.
☐  Buyer, or if Buyer does not quote a rate of exchange on such currency, by a known dealer in such currency designated by Buyer.
☐  [name of dealer], or if [name of same dealer as in first blank in this sentence] does not quote a rate of exchange on such currency, by a known dealer in such currency designated by the mutual agreement of the Parties.

**I.**     **SECTION 27 (ADDITIONAL PROVISIONS)**

None

WHEREOF, Seller and Buyer have executed this Agreement by their duly authori: representatives as of the Agreement Date.

**SELLER**

████████████████████████

By: ████████████████

Name:
Title: ████████████████

**BUYER**

**Monarch Master Funding Ltd**

**By: Monarch Alternative Capital LP**
**Its: Advisor**

By: _____
Name:
Title:     Christopher Santana
           Managing Principal

**ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES**

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

N/A

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

None

3.    Description of Proof of Claim (if any).

N/A

4.    Description of Adequate Protection Order (if any).

N/A

5.    List any exceptions to Section 4.1(w) (<u>Notice of Impairment</u>).

None

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is $0.00.



January 21, 2010

Monarch Master Funding Ltd
C/O Monarch Alternative Capital LP
535 Madison Avenue
New York, NY 10022
Attention: Michael Gillin

**Purchase Price Letter: Hicks Sports Group LLC**
███████████████████████ **"Seller") to**
**Monarch Master Funding Ltd ("Buyer")**
**(Trade Date: October 29, 2009)**

    Reference is made to that certain Purchase and Sale Agreement for Distressed Trades, dated as of the date hereof, between the parties hereto (the "Purchase and Sale Agreement"). This is the Purchase Price Letter referred to therein.  Capitalized terms used and not defined herein shall have the meanings assigned to them in the Purchase and Sale Agreement.

    The Purchase Price to be paid by the Buyer to the Seller in respect of the Transferred Rights shall be paid upon satisfaction of the terms and conditions set forth in the Agreement by wire transfer of immediately available funds to the Seller in accordance with the wire transfer instructions set forth on Schedule 1 attached hereto and shall be calculated as set forth on Schedule 1 hereto.

(Signatures on following page)

WCSR 4230733v1

(Signatures to Purchase Price Letter)

⁞        irm your agreement to the foregoing by signing in the space provided below.

SELLER:

████████████████████████

By: _____
Name: ████████████████
Title:  Authorized Signatory

BUYER:

Monarch ▓▓▓ Funding Ltd
By: Mona▓ ▓▓▓▓tive Capital LP
Its: Advi▓▓ r

By: _____
Name:
Title:    Christopher Santana
          Managing Principal

**<u>Schedule 1 to Purchase Price Letter</u>**

*(Please see attached spreadsheet)*

**REDACTED**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the **"Assignment"**) is dated as of the Effective Date set forth below and is entered into by and between ▮▮▮▮▮▮▮▮▮▮▮ (the **"Assignor"**) and Monarch Master Funding Ltd (the **"Assignee"**). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the **"Credit Agreement"**), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the **"Assigned Interest"**). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor: ▮▮▮▮▮▮▮▮▮▮▮

2.  Assignee: Monarch Master Funding Ltd

3.  Borrower(s): **HICKS SPORTS GROUP LLC**

4.  Administrative Agent: **JPMORGAN CHASE BANK, N.A.,** as administrative agent under the Credit Agreement

5.  Credit Agreement: The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among **HICKS SPORTS GROUP LLC** (**"Company"**), **HICKS SPORTS GROUP HOLDINGS LLC** and **CERTAIN SUBSIDIARIES OF THE COMPANY,** as Guarantors, the lenders party thereto, **JPMORGAN CHASE BANK, N.A.,** as administrative agent, and the other agents parties thereto.

6. Assigned Interest: Term Loan and Revolving Commitment

| Facility Assigned | Aggregate Amount of Commitment/Loans for all Lenders | Amount of Commitment/Loans Assigned[1] | Percentage Assigned of Commitment/Loans |
|---|---|---|---|
| Term Loan | $350,000,000.00 | $24,000,000.00 | 6.857142857% |
| Revolving Commitment | $61,880,674.50 | $11,551,059.24 | 18.66666667% |

Effective Date: JAN 21 2009

6. Notice and Wire Instructions:

| ██████████████████████ | MONARCH MASTER FUNDING LTD |
|---|---|
| On file with Agent. | On file with Agent. |

---

[1] Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

By: _____
Title: _____
Authorized Signatory

ASSIGNEE

MONARCHMASTER FUNDING LTD
By: Monarch Alternative Capital LP
Its: Advisor

By: _____
Title: _____
Christopher Santana
Managing Principal

Accepted:
JPMORGAN CHASE BANK, N.A., as
Administrative Agent

By: _____
Title: _____
Christopher Cestaro
Authorized Signatory

Consented to:
HICKS SPORTS GROUP LLC

By: ____N/A_____
Title:

ANNEX 1

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.   Representations and Warranties.

     1.1.   Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the **"Credit Documents"**), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

     1.2.   Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non-US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of commercial lending and has capital and surplus and undivided profits of at least $250,000,000; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

    2.   Payments. All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

     2.1.   With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2.    With respect to Assigned Interests for Revolving Loans, from and after the Effective Date, the Administrative Agent(s) shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.[2]

3.    General Provisions. This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

[Remainder of page intentionally left blank]

---

[2]  Administrative Agent should consider whether this method conforms to its systems. In some circumstances, the following alternative language may be appropriate: "From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignee whether such amounts have accrued prior to or on or after the Effective Date. The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves."

# LSTA DISTRESSED TRADE CONFIRMATION

**To:**   *Monarch Master Funding Ltd*

    *Attention:*   **Michael Gillin**

    *Phone No.:*   **(212) 554-1743**

    *Fax No.:*   **(866) 741-3564**

    *Email:*   **michael.gillin@monarchlp.com**

**From:**   ███████████

    *Attention:*   ███████████

    *Phone No.:*

    *Fax No.:*   ███████████

    *Email:*   ███████████

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Distressed Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc. (the "LSTA") as of September 25, 2009, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

**Trade Date:**   10/30/2009

**Seller:**   ███████████   ☑ Principal  ☐ Agent

**Buyer:**   Monarch Master Funding Ltd   ☑ Principal  ☐ Agent

**Credit Agreement:**   Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent.

**Borrower:**   Hicks Sports Group LLC

**Form of Purchase:**   Assignment

**Purchase Amount /**
**Type of Debt:**

| Purchase Amount | Type of Debt | Facility | CUSIP |
|---|---|---|---|
| USD  1,000,000.00 | Term | Term Loan | 84522UAB2 |

**Purchase Rate:**   ███████ Term Loan

751807001

LSTA EFFECTIVE September 2009 Copyright © LSTA 2009. All rights reserved.

| Accrued Interest: | ☐ Settled Without Accrued Interest |
| | ☑ Trades Flat |

**Credit Documents**
**to be provided:**          No

**Other Terms of Trade:**  

**Subject To:**          Negotiation, execution and delivery of reasonably acceptable contracts and instruments of
transfer in accordance herewith.

Please provide the signature of a duly authorized signatory where indicated below and return this letter to
the attention of Christopher Bosworth at the following fax number (646)453-2870 or by email at
Chris.Bosworth@markit.com.

If you have any questions, please contact Christopher Bosworth at (845)639-4889.

Monarch Master Funding Ltd
By: Monarch Alternative Capital LP
Its: Advisor

By: _____

Name:

Title:  Vice President

By: _____

Name:    Christopher Santana

Title:    Managing Principal

LSTA EFFECTIVE September 2009  Copyright © LSTA 2009.  All rights reserved.



## TRADE CLAIM CONFIRMATION (TERMINATED SWAP CLAIM)

| | | | | | |
|---|---|---|---|---|---|
| **To:** | **Buyer Name:** | **Monarch Master Funding Ltd.** | **From:** | **Seller Name:** | |
| | **Contact Person:** | **Michael Gillin** | | **Contact Person:** | |
| | **Phone No.:** | **212- 554-1743** | | **Phone No.:** | |
| | **Fax No.:** | **866-741-3564** | | **Fax No.:** | |
| | **E-mail Address:** | **Michael.gillin@mona rchlp.com** | | **E-mail Address:** | |

| | |
|---|---|
| **Trade Date:** | January 4, 2010 |
| **Seller:** | ⬛⬛⬛⬛⬛⬛ |
| | ☒ Principal ☐ Agent |
| **Buyer:** | Monarch Master Funding Ltd. |
| | ☒ Principal ☐ Agent |
| **Settlement Date:** | As soon as practicable |
| **Supporting Claim Documents:** | Master (ISDA) Agreement dated as of February 9, 2006 by and between Seller and Hicks Sports Group LLC (f/k/a Southwest Sports Group, LLC) ("Debtor"); related Schedule to Master Agreement dated as of February 9, 2006 between Seller and Debtor; Notice of Early Termination for Event of Default dated April 7, 2009 from Seller to Debtor; Notice of Amount Due Following Early Termination dated April 10, 2009 from Seller to Debtor; and any other agreements or documents which evidence or support the Claim. |
| **Reference Credit Agreement:** | AMENDED AND RESTATED FIRST LIEN CREDIT AND GUARANTY AGREEEMENT, dated as of December 19, 2006, by and among HICKS SPORTS GROUP LLC, HICKS SPORTS GROUP HOLDINGS LLC, CERTAIN SUBSIDIARIES OF HICKS SPORTS GROUP LLC, as Guarantors, the Lenders from time to time party thereto, JPMORGAN CHASE BANK, N.A., as Administrative Agent and Collateral Agent. |
| **Debtor:** | HICKS SPORTS GROUP LLC |
| **Purchase Amount/ Type of Debt ("Claim"):** | $3,493,297.50 claim which is secured *pari passu* with loans under the Reference Credit Agreement. |
| **Purchase Rate:** | ⬛⬛⬛ |
| **Accrued Interest:** | ☒ Trades Flat - Any payments, distributions or other rights of any kind, made, applied or granted in respect of the Claim (regardless of accrual period) on or after the Trade Date shall be for the benefit of Buyer's account. |
| **Supporting Claim Documents to be provided by Seller:** | ☒ Yes |
| | ☐ No |

WCSR 4289247v6

2

| | |
|---|---|
| **Subject to:** | This Transaction shall be subject to: |

Negotiation, execution, and delivery of a reasonably acceptable Participation of Claim Agreement for the Claim (including any other reasonably related acceptable contracts and instruments of transfer) containing customary representations, warranties, covenants, indemnities and other provisions for the purchase and sale (or participation) of a distressed trade claim owed by a debtor ("Participation Agreement"), which provisions shall include, without limitation:

(A) a representation (and related covenant) that the Claim is secured *pari passu* with the loans under the Reference Credit Agreement, such that the Claim and all related rights, payments, and distributions should be made, applied and granted as set forth in the Reference Credit Agreement and the Amended and Restated First Lien Pledge and Security Agreement ("the Pledge Agreement"); and

(B) Seller's covenant to repay Buyer (upon Buyer's request) any purchase price paid for the Claim, plus interest thereon, at a rate per annum equal to LIBOR, for any part of the Claim (or any distribution made in respect thereof) that is (a) disallowed, reduced, subordinated or otherwise impaired pursuant to a final order of any applicable court of competent jurisdiction or (b) not secured or treated *pari passu* with the loans (or any distributions made in respect thereof) under the Reference Credit Agreement, so long as any such disallowance, reduction, subordination, other impairment or change in priority or security status is not due to any action or inaction on behalf of Buyer.

(C) a representation that Seller has duly and timely performed all requirements under the Supporting Claim Documents and Reference Credit Agreement to properly calculate the amount of the Claim and maintain the secured status of the Claim *pari passu* with the loans under the Reference Credit Agreement.

**Other Terms of Trade:**   Seller shall follow Buyer's instructions with respect to any action, omission or vote related to the Claim provided that if any such action, omission or vote is not divisible in respect of the participation but may be made only in respect of all loans and commitments held by Seller under the Reference Credit Agreement, Seller shall take such action or vote in accordance with the direction of holders owning or holding interests representing more than 50% of the total amount of Seller's claims.

The parties hereto agree that if at any time Seller or Buyer reasonably determines that an assignment of the Claim to Buyer shall not cause the Claim to no longer be a "Secured Obligation" under the Pledge Agreement, the parties will use commercially reasonable efforts and take such actions as are necessary, as soon as reasonably practical, to cause Buyer to elevate the Participation Agreement to an assignment.

Seller will have no responsibility for the Claim other than to take any actions reasonably requested by Buyer related to the enforcement or defense of the Claim so long as Buyer indemnifies Seller for all reasonable costs and expenses related thereto.

**Confidentiality:**   Each of the parties hereto shall maintain the confidentiality of the terms of the transaction unless otherwise required by law or regulatory authority.

**Binding Effect:**   Seller and Buyer agree and acknowledge that events occurring after the trade date shall not relieve the parties of their obligations under this Trade Claim Confirmation, and until the Settlement Date, a breach by Buyer hereunder as determined by a court of competent jurisdiction, or the date of

3

Claim Confirmation, and until the Settlement Date, a breach by Buyer hereunder as determined by a court of competent jurisdiction, or the date of an agreement executed in writing by both Seller and Buyer voiding such trade and obligations related thereto, Seller shall cease all discussions with other purchasers and shall decline all offers for the Claim.

**Counterparts/ Delivery:** This Trade Claim Confirmation may be executed in counterparts, each of which, when executed and delivered, shall be an original, but all of which, together shall constitute one and the same instrument. Transmission by facsimile or electronic mail of an executed counterpart of this Trade Claim Confirmation shall be deemed to constitute due and sufficient delivery of such counterpart

**Governing Law:** This Trade Claim Confirmation and the Assignment (or participation) Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to any choice of law principles that require or permit the application of any other jurisdiction's laws).

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the attention of ▓▓▓▓▓▓▓▓ at the following fax number(s) or e-mail address(es): ▓▓▓▓▓▓▓▓

If you have any questions, please contact ▓▓▓▓▓▓▓▓▓▓▓

*SELLER*

▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

By:_____

Name:_____

Title:_____

Date:_____

*BUYER*

**Monarch Master Funding Ltd**
**By: Monarch Alternative Capital LP**
**Its: Advisor**

By:_____

Name:_ Christopher Santana _
         Managing Principal

Title:_____

Date:_____

# LSTA DISTRESSED TRADE CONFIRMATION

**To:**     *Monarch Master Funding Ltd*

        *Attention:*       *Michael Gillin*

        *Phone No.:*     *(212) 554-1743*

        *Fax No.:*       *(866)741-3564*

        *Email:*         *michael.gillin@monarchlp.com*

**From:**

        *Attention:*

        *Phone No.:*

        *Fax No.:*

        *Email:*

            We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Distressed Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc. (the "LSTA") as of January 12, 2010, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

**Trade Date:**        04/01/2010

**Seller:**                                           ☑ Principal   ☐ Agent

**Buyer:**          Monarch Master Funding Ltd       ☑ Principal   ☐ Agent

**Credit Agreement:**   Amended and Restated First Lien Credit and Guaranty Agreement, dated December 19, 2006, among Hicks Sports Group LLC (formerly known as Southwest Sports Group LLC), Hicks Sports Group Holdings LLC (formerly known as Southwest Sports Group Holdings LLC), Lenders from time to time party thereto, and JPMorgan Chase Bank, N.A. as Administrative Agent.

**Borrower:**      Hicks Sports Group LLC

**Form of Purchase:**   Assignment

**Purchase Amount / Type of Debt:**

| Purchase Amount | Type of Debt | Facility | CUSIP |
|---|---|---|---|
| USD     25,000,000.00 | Term | Term Loan | 84522UAB2 |

**Purchase Rate:**                    Term Loan

814369001

LSTA EFFECTIVE January 2010  Copyright © LSTA 2010.  All rights reserved.

**Accrued Interest:**      ☑ Settled Without Accrued Interest
                                 ❑ Trades Flat

**Credit Documents**      No
**to be provided:**

**Other Terms of Trade:**



**Subject To:**      Negotiation, execution and delivery of reasonably acceptable contracts and instruments of transfer in accordance herewith.

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the attention of Zef Narkaj at the following fax number (646)453-2870 or by email at Zef.Narkaj@markit.com.

If you have any questions, please contact Zef Narkaj at (845)639-4811.

                                                        **Monarch Master Funding Ltd**
                                                        **By: Monarch Alternative Capital LP**
                                                        **Its: Advisor**

By: _____                 By: _____

Name: ▓▓▓▓▓                                  Name:
Title:     Associate                                  Title:

LSTA EFFECTIVE January 2010  Copyright © LSTA 2010.  All rights reserved.

# **Exhibit C**

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF AVERY POINT CLO, LIMITED

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Avery Point CLO, Limited ("Avery Point")

against Rangers Equity Holdings, L.P. (the "Debtor") were acquired on or about January 4, 2007,

as reflected in the attached documentation. Avery Point acquired its claims for investment

purposes and not for the purpose of commencing a bankruptcy case against the Debtor.

Date: May 27, 2010

AVERY POINT CLO, LIMITED
Sankaty Advisors, LLC as Collateral Manager

By _____
Name: Andrew S. Viens
Title:  Senior Vice President of Operations

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ████████████ (the "Assignor") and the Assignee identified on the attached signature pages hereto (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor:            ████████████

2.  Assignee:            as identified on the attached signature pages hereto

3.  Borrower(s):         HICKS SPORTS GROUP LLC

4.  Administrative Agent:  BARCLAYS BANK PLC, as administrative agent under the Credit Agreement.

5.  Credit Agreement:    The $115,000,000 Second Lien Credit Agreement dated as of December 19, 2006 among HICKS SPORTS GROUP LLC ("Company"), HICKS SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, BARCLAYS BANK PLC, as administrative agent, the other agents and the arrangers parties thereto.

[remainder of page intentionally left blank]

ASSIGNMENT AND ASSUMPTION AGREEMENT

6.     Assigned Interest:

| | | | |
|---|---|---|---|
| 2nd Lien Term Loan Facility | $115,000,000.00 | $1,256,013.67 | 1.09218580004% |

Effective Date: January 1ᴸ, 2007

The terms set forth in this Assignment and Assumption are hereby agreed to:

ASSIGNEE:

AVERY POINT CLO, LIMITED
By: Sankaty Advisors, LLC as Collateral Manager

By: _____
Name:
Title:

ANDREW STENS
DIRECTOR OF OPERATIONS
SANKATY ADVISORS

ASSIGNMENT AND ASSUMPTION AGREEMENT

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By:
Title:

Consented to and Accepted:

BARCLAYS BANK PLC, as
Administrative Agent

By:
Title: Director

ASSIGNMENT AND ASSUMPTION AGREEMENT

Consented to:

HICKS SPORTS GROUP LLC

By: *Casey Shields*

Title: *Executive Vice President*

ASSIGNMENT AND ASSUMPTION AGREEMENT

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By:
Title:

Consented to and Accepted:

**BARCLAYS BANK PLC, as**
Administrative Agent

By:
Title: Director

ASSIGNMENT AND ASSUMPTION AGREEMENT

Consented to:

**HICKS SPORTS GROUP LLC**

By: Casey Shilts

Title: Executive Vice President

ASSIGNMENT AND ASSUMPTION AGREEMENT

ANNEX I

### STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
### AND ASSUMPTION AGREEMENT

1. <u>Representations and Warranties</u>.

    1.1 <u>Assignor</u>. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

    1.2 <u>Assignee</u>. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non-US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of commercial lending and has capital and surplus and undivided profits of at least $250,000,000[1]; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

---

[1] This representation and warranty to be given only if the Assignee meets such requirements. If the Assignee does not meet such requirements, then the effectiveness of this Assignment is, under the terms of the NHL Consent Letter, subject to consent of the NHL.

ASSIGNMENT AND ASSUMPTION AGREEMENT

2.    **Payments.** All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

    2.1    Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.    **General Provisions.** This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

[Remainder of page intentionally left blank]

ASSIGNMENT AND ASSUMPTION AGREEMENT

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF CHATHAM LIGHT II CLO, LIMITED

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Chatham Light II CLO, Limited ("Chatham Light

II") against Rangers Equity Holdings, L.P. (the "Debtor") were acquired on or about January 11,

2006 and January 12, 2006, as reflected in the attached documentation.  Chatham Light II

acquired its claims for investment purposes and not for the purpose of commencing a bankruptcy

case against the Debtor.

Date:  May 25, 2010

CHATHAM LIGHT II CLO, LIMITED
By:  Sankaty Advisors, LLC as Collateral Manager

By _____
Name:  Sally D. Fassler
Title:    Chief Financial Officer

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (the "Assignor") and Chatham Light II CLO, Limited (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agents as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

| | |
|---|---|
| 1. Assignor: | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| 2. Assignee: | Chatham Light II CLO, Limited |
| 3. Borrower(s): | SOUTHWEST SPORTS GROUP LLC |
| 4. Co-Administrative Agents: | GOLDMAN SACHS CREDIT PARTNERS L.P. and JPMORGAN CHASE BANK, N.A., as the co-administrative agents under the Credit Agreement |
| 5. Credit Agreement: | The $325,000,000 Credit Agreement dated as of December 22, 2005 among SOUTHWEST SPORTS GROUP LLC ("Company"), SOUTHWEST SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF THE COMPANY, as Guarantors, the lenders party thereto, GOLDMAN SACHS CREDIT PARTNERS, L.P. and JPMORGAN CHASE BANK, N.A., as Co-Administrative Agents, and the other agents parties thereto. |

5. Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment/Loans for all Lenders | Amount of Commitment/Loans Assigned | Percentage Assigned of Commitment/Loans* |
|---|---|---|---|
| Term Loan | $285,000,000.00 | $3,418,522.86 | 1.199481705 % |

Effective Date:   January 11, 2006

7. Notice and Wire Instructions:



Notices:

*Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

Page 2

**Chatham Light II CLO, Limited**

Wire Instructions:

Chatham Light II CLO, Limited

| | |
|---|---|
| **Bank:** | JPMorgan Chase Bank, Houston, TX |
| **ABA#:** | 113 000 609 |
| **Acct Name:** | Asset Backed Structured #2 |
| **Acct #:** | 00102619468 |
| **FFC:** | Chatham Light II CLO Limited / A/C# 10222746.1 |
| **Attn:** | Kenneth Nutt / Ref: Customer Name / Principal / Interest / or Fees |
| **Ref:** | SOUTHWEST SPORTS GROUP LLC |

Notices:

Chatham Light II CLO, Limited
111 Huntington Avenue
Boston, MA 02116
Phone:   617.516.2730
Fax:      (617) 516-2710
Contact:  Diane Exter
E-mail:   SankatyOperations@sankatyadvisors.com

The terms set forth in this Assignment are hereby agreed to:



ASSIGNOR

By:

ASSIGNEE
CHATHAM LIGHT II CLO, LIMITED, as
Assignee

By: Sankaty Advisors, LLC as Collateral Manager

By:

Name:  Diane Exter
Title:   Portfolio Manager

Consented to and Accepted:

**GOLDMAN SACHS CREDIT PARTNERS L.P., as
Co-Administrative Agent**

By: _Jennifer Cann_____

    Name: Jennifer Cann
    Title:  Authorized Signatory

Consented to:

**SOUTHWEST SPORTS GROUP LLC**

By: _____N/A_____

    Name:
    Title:

ANNEX I

## STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT AND ASSUMPTION AGREEMENT

`. Representations and Warranties.

1.1 Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2. Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2. Payments. All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1 With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2 With respect to Assigned Interests for Revolving Loans, from and after the Effective Date, the Administrative Agent(s) shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.*

3. General Provisions. This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and

*Administrative Agent should consider whether this method conforms to its systems. In some circumstances, the following alternative language may be appropriate: "From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor whether such amounts have accrued prior to or on or after the Effective Date. The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves."

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ▇▇▇▇▇▇▇▇▇ (the "Assignor") and Chatham Light II CLO, Limited (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agents as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:                    ▇▇▇▇▇▇▇▇▇▇▇▇▇

2. Assignee:                    Chatham Light II CLO, Limited

3. Borrower(s):                 SOUTHWEST SPORTS GROUP LLC

4. Co-Administrative Agents:    GOLDMAN SACHS CREDIT PARTNERS L.P. and JPMORGAN CHASE
                                BANK, N.A., as the co-administrative agents under the Credit Agreement

5. Credit Agreement:            The $325,000,000 Credit Agreement dated as of December 22, 2005 among
                                SOUTHWEST SPORTS GROUP LLC ("Company"), SOUTHWEST
                                SPORTS GROUP HOLDINGS LLC and CERTAIN SUBSIDIARIES OF
                                THE COMPANY, as Guarantors, the lenders party thereto, GOLDMAN
                                SACHS CREDIT PARTNERS, L.P. and JPMORGAN CHASE BANK, N.A.,
                                as Co-Administrative Agents, and the other agents parties thereto.

heir respective successors and assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

6. Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment/Loans for all Lenders | Amount of Commitment/Loans Assigned | Percentage Assigned of Commitment/Loans* |
|---|---|---|---|
| Term Loan | $285,000,000.00 | $474,794.84 | 0.166594681 % |

Effective Date:    January 12, 2006

7. Notice and Wire Instructions:



Notices:



*Set forth, to at least 9 decimals, as a percentage of the Commitment/Loans of all Lenders thereunder.

**Chatham Light II CLO, Limited**

Wire Instructions:

Chatham Light II CLO, Limited

| | |
|---|---|
| Bank: | JPMorgan Chase Bank, Houston, TX |
| ABA#: | 113 000 609 |
| Acct Name: | Asset Backed Structured #2 |
| Acct #: | 00102619468 |
| FFC: | Chatham Light II CLO Limited / A/C# 10222746.1 |
| Attn: | Kenneth Nutt / Ref: Customer Name / Principal / Interest / or Fees |
| Ref: | SOUTHWEST SPORTS GROUP LLC |

Notices:

Chatham Light II CLO, Limited
111 Huntington Avenue
Boston, MA 02116
Phone:  617.516.2730
Fax:     (617) 516-2710
Contact: Diane Exter
E-mail:  SankatyOperations@sankatyadvisors.com

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By:

Name:
Title:


ASSIGNEE
CHATHAM LIGHT II CLO, LIMITED, as
Assignee

By: Sankaty Advisors, LLC as Collateral Manager

By:

Name:  Diane Exter
Title:  Portfolio Manager

Consented to and Accepted:

**GOLDMAN SACHS CREDIT PARTNERS L.P., as
Co-Administrative Agent**

By: _Jennifer Caso_____

     Name:  Jennifer Caso
     Title:   Authorized Signatory


Consented to:

**SOUTHWEST SPORTS GROUP LLC**

By: _____N/A_____

     Name:
     Title:

ANNEX 1

## STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
## AND ASSUMPTION AGREEMENT

1. Representations and Warranties.

1.1 Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2. Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2. Payments. All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1 With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2 With respect to Assigned Interests for Revolving Loans, from and after the Effective Date, the Administrative Agent(s) shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.*

3. General Provisions. This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and

---

*Administrative Agent should consider whether this method conforms to its systems. In some circumstances, the following alternative language may be appropriate: "From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor whether such amounts have accrued prior to or on or after the Effective Date. The Assignor and the Assignee shall make all appropriate adjustments in payments by the Administrative Agent for periods prior to the Effective Date or with respect to the making of this assignment directly between themselves."

their respective successors and assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF NASH POINT CLO

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Nash Point CLO ("Nash Point") against Rangers

Equity Holdings, L.P. (the "Debtor") were acquired on or about January 5, 2007, as reflected in

the attached documentation.  Nash Point acquired its claims for investment purposes and not for

the purpose of commencing a bankruptcy case against the Debtor.

Date:  May 25, 2010

NASH POINT CLO
By:  Sankaty Advisors, LLC as Collateral Manager

By
Name:  Sally D. Fassler
Title:   Chief Financial Officer

i

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ███████████████ (the "Assignor") and the Assignees identified on the attached signature pages hereto (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex I attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

| | | |
|---|---|---|
| 1. | Assignor: | ████████████ |
| 2. | Assignee: | as identified on the attached signature pages hereto |
| 3. | Borrower(s): | **HICKS SPORTS GROUP LLC** |
| 4. | Administrative Agent: | **BARCLAYS BANK PLC**, as administrative agent under the Credit Agreement. |
| 5. | Credit Agreement: | The $115,000,000 Second Lien Credit Agreement dated as of December 19, 2006 among **HICKS SPORTS GROUP LLC** ("Company"), **HICKS SPORTS GROUP HOLDINGS LLC** and **CERTAIN SUBSIDIARIES OF THE COMPANY**, as Guarantors, the lenders party thereto, **BARCLAYS BANK PLC**, as administrative agent, the other agents and the arrangers parties thereto. |

[remainder of page intentionally left blank]

ASSIGNMENT AND ASSUMPTION AGREEMENT

6.    Assigned Interest:

| Facility Assigned | Aggregate Principal Amount of Revolving Loan for All Lenders | Amount of Commitment Being Assigned | Percentage Assignment (commitment level) |
|---|---|---|---|
| 2nd Lien Term Loan Facility | $115,000,000.00 | $1,955,730.62 | 1.70063532% |

Effective Date: January *5*, 2007

The terms set forth in this Assignment and Assumption are hereby agreed to:

ASSIGNEE

Nash Point CLO
By: Sankaty Advisors, LLC as Collateral Manager

By: _____
Name: 
Title:

ANDREW VIENS
DIRECTOR OF OPERATIONS
SANKATY ADVISORS

ASSIGNMENT AND ASSUMPTION AGREEMENT

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR 

By:
Title:

Consented to and Accepted:

**BARCLAYS BANK PLC,** as
Administrative Agent

By:
Title: Director

ASSIGNMENT AND ASSUMPTION AGREEMENT

Consented to:

**HICKS SPORTS GROUP LLC**

By: *Casey Shilts*

Title: *Executive Vice President*

ASSIGNMENT AND ASSUMPTION AGREEMENT

ANNEX I

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

I.    Representations and Warranties.

    1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial
owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien,
encumbrance or other adverse claim and (iii) it has full power and authority, and has taken
all action necessary, to execute and deliver this Assignment and to consummate the
transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any
statements, warranties or representations made in or in connection with any Credit
Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or
value of the Credit Agreement or any other instrument or document delivered pursuant
thereto, other than this Assignment (herein collectively the "Credit Documents"), or any
collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or
Affiliates or any other Person obligated in respect of any Credit Document or (iv) the
performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any
other Person of any of their respective obligations under any Credit Document.

    1.2    Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority,
and has taken all action necessary, to execute and deliver this Assignment and to
consummate the transactions contemplated hereby and to become a Lender under the Credit
Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit
Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the
Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a
Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other
documents and information as it has deemed appropriate to make its own credit analysis
and decision to enter into this Assignment and to purchase the Assigned Interest on the
basis of which it has made such analysis and decision, (v) it has received a copy of the NHL
Consent letter, (vi) if it is a Non-US Lender, attached to the Assignment is any
documentation required to be delivered by it pursuant to the terms of the Credit Agreement,
duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of
The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and
consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to
execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which
execution and delivery shall be binding upon and enforceable against it as if such execution
and delivery had been made by it directly, and in addition, to the extent necessary to
comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and
deliver an original counterpart of The Bank of New York Form of Acknowledgment for the
benefit of such Collateral Trustee upon request, and (viii) it is a financial institution
regularly engaged in the business of commercial lending and has capital and surplus and
undivided profits of at least $250,000,000[1]; and (b) agrees that (i) it will, independently and
without reliance on the Administrative Agent(s), the Assignor or any other Lender, and
based on such documents and information as it shall deem appropriate at that time, continue
to make its own credit decisions in taking or not taking action under the Credit Documents,
and (ii) it will perform in accordance with their terms all of the obligations which by the
terms of the Credit Documents are required to be performed by it as a Lender.

---

[1] This representation and warranty to be given only if the Assignee meets such requirements.  If the Assignee does not meet such
requirements, then the effectiveness of this Assignment is, under the terms of the NHL Consent Letter, subject to
consent of the NHL.

ASSIGNMENT AND ASSUMPTION AGREEMENT

2.    Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

    2.1    Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.    General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

               [Remainder of page intentionally left blank]

ASSIGNMENT AND ASSUMPTION AGREEMENT

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF RACE POINT IV CLO, LTD.

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Race Point IV CLO, Ltd. ("Race Point IV")

against Rangers Equity Holdings, L.P. (the "Debtor") were acquired on or about January 4, 2007,

as reflected in the attached documentation. Race Point IV acquired its claims for investment

purposes and not for the purpose of commencing a bankruptcy case against the Debtor.

Date: May 27, 2010

RACE POINT IV CLO, LTD.
Sankaty Advisors, LLC as Collateral Manager

By

Name: Andrew S. Viens
Title: Senior Vice President of Operations

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ████████████████ (the "Assignor") and the Assignees identified on the attached signature pages hereto (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

| | | |
|---|---|---|
| 1. | Assignor: | ██████████████ |
| 2. | Assignee: | as identified on the attached signature pages hereto |
| 3. | Borrower(s): | **HICKS SPORTS GROUP LLC** |
| 4. | Administrative Agent: | **BARCLAYS BANK PLC**, as administrative agent under the Credit Agreement. |
| 5. | Credit Agreement: | The $115,000,000 Second Lien Credit Agreement dated as of December 19, 2006 among **HICKS SPORTS GROUP LLC** ("Company"), **HICKS SPORTS GROUP HOLDINGS LLC** and **CERTAIN SUBSIDIARIES OF THE COMPANY**, as Guarantors, the lenders party thereto, **BARCLAYS BANK PLC**, as administrative agent, the other agents and the arrangers parties thereto. |

[remainder of page intentionally left blank]

ASSIGNMENT AND ASSUMPTION AGREEMENT

6.    Assigned Interest:

| | | | |
|---|---|---|---|
| 2nd Lien Term Loan Facility | $115,000,000.00 | $2,006,339.60 | 1.74464313096% |

Effective Date: January  ⅏, 2007

The terms set forth in this Assignment and Assumption are hereby agreed to:

ASSIGNEE

Race Point IV CLO, Ltd.
By:  Sankaty Advisors, LLC as Collateral Manager

By: _____
Name: _____
Title: _____

ANDREW VIENS
DIRECTOR OF OPERATIONS
SANKATY ADVISORS

ASSIGNMENT AND ASSUMPTION AGREEMENT

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

███████████

By: ████████████
Title: ████████

Consented to and Accepted:

**BARCLAYS BANK PLC,** as
Administrative Agent

By: _Diane J Belfer_
Title: _Director_

ASSIGNMENT AND ASSUMPTION AGREEMENT

Consented to:

**HICKS SPORTS GROUP LLC**

By: *Casey Shilts*
Title: *Executive Vice President*

ASSIGNMENT AND ASSUMPTION AGREEMENT

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR 

By:
Title:

Consented to and Accepted:

**BARCLAYS BANK PLC,** as
Administrative Agent

By:
Title: Director

ASSIGNMENT AND ASSUMPTION AGREEMENT

Consented to:

**HICKS SPORTS GROUP LLC**

By: _Casey Shilts_
Title: _Executive Vice President_

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.    **Representations and Warranties.**

1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2    Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non-US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request, and (viii) it is a financial institution regularly engaged in the business of commercial lending and has capital and surplus and undivided profits of at least $250,000,000[1]; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

---

[1] This representation and warranty to be given only if the Assignee meets such requirements.  If the Assignee does not meet such requirements, then the effectiveness of this Assignment is, under the terms of the NHL Consent Letter, subject to consent of the NHL.

ASSIGNMENT AND ASSUMPTION AGREEMENT

2.    Payments. All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

    2.1    Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.    General Provisions. This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment. This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

[Remainder of page intentionally left blank]

ASSIGNMENT AND ASSUMPTION AGREEMENT

# **Exhibit D**

## RULE 1003 STATEMENT REGARDING
## CLAIMS OF STONEHILL OFFSHORE PARTNERS LIMITED

The undersigned hereby states, pursuant to Rule 1003(a) of the Federal Rules of

Bankruptcy Procedure, that the claims held by Stonehill Offshore Partners Limited ("Stonehill")

against Rangers Equity Holdings, L.P. (the "Debtor") were acquired on or about October 1,

2008, as reflected in the attached documentation.  Stonehill Capital acquired its claims for

investment purposes and not for the purpose of commencing a bankruptcy case against the

Debtor.

Date:  May 28, 2010

STONEHILL OFFSHORE PARTNERS LIMITED
By:  Stonehill Capital Management LLC

By _____
Name:   Wayne Teetsel
Title:     Managing Member

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the **"Assignment"**) is dated as of the Effective Date set forth below and is entered into by and between Assignor identified on the attached signature pages hereto (the **"Assignor"**) and the Assignee identified on the attached signature pages hereto (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Credit Agreement identified below (as it may be amended, amended and restated, supplemented or otherwise modified from time to time, the **"Credit Agreement"**), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters or credit and swingline loans) (the **"Assigned Interest"**). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

| | |
|---|---|
| 1. Assignor: | ████████████████ |
| 2. Assignee: | **STONEHILL OFFSHORE PARTNERS LIMITED** |
| 3. Borrower: | **HICKS SPORTS GROUP LLC** |
| 4. Administrative Agent: | **JPMORGAN CHASE BANK, N.A.,** as administrative agent under the Credit Agreement. |
| 5. Credit Agreement: | The $425,000,000 Amended and Restated First Lien Credit Agreement dated as of December 19, 2006 among **HICKS SPORTS GROUP LLC (the "Company"), HICKS SPORTS GROUP HOLDINGS LLC** and **CERTAIN SUBSIDIARIES OF THE COMPANY,** as Guarantors, the lenders party thereto, **JPMORGAN CHASE BANK, N.A.,** as administrative agent, and the other agents parties thereto. |

6. Assigned Interest:

| Facility Assigned | Aggregate Amount of Commitment/ Loans for all Lenders | Amount of Commitment/ Loans Assigned | Percentage Assigned of Commitment/Loans |
|---|---|---|---|
| Term Loan | USD 350,000,000.00 | USD 3,300,000.00 | 0.942857142857% |

Effective Date: May 28, 2010

The terms set forth in this Assignment and Assumption are hereby agreed to:

ASSIGNOR:

By:_____
Name:
Title:

ASSIGNEE:

STONEHILL OFFSHORE PARTNERS
LIMITED

By:  Stonehill Capital Management, LLC,
     its Investment Adviser



By:_____
Name:  Thomas Varkey
Title:_____

A MANAGING MEMBER OF
STONEHILL CAPITAL MANAGEMENT LLC,
ITS ADVISER

Consented to and Accepted:

JPMORGAN CHASE BANK, N.A., as
Administrative Agent

By:_____
Name:  Christopher Cestaro
Title:  Authorized Signatory

Consented to:

HICKS SPORTS GROUP LLC

By:_____N/A_____
Name:_____
Title:_____

ANNEX 1
STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.    Representations and Warranties.

1.1.    Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the **"Credit Documents"**), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2.    Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, (v) it has received a copy of the NHL Consent letter, (vi) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee, and (vii) it has received and reviewed a copy of The Bank of New York Form of Acknowledgment regarding the Dallas Arena Project and consents to be bound by the terms thereof, and it hereby directs the Administrative Agent to execute and deliver on its behalf The Bank of New York Form of Acknowledgment, which execution and delivery shall be binding upon and enforceable against it as if such execution and delivery had been made by it directly, and in addition, to the extent necessary to comply with the terms of the Stars Non-Relocation Agreement, it agrees to execute and deliver an original counterpart of The Bank of New York Form of Acknowledgment for the benefit of such Collateral Trustee upon request; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent(s), the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.      Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1.      Unless notice to the contrary is delivered to the Lender from the Administrative Agent(s), payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

3.      General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.   This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

## LSTA DISTRESSED TRADE CONFIRMATION

*To:*   **Buyer Name:**   ***Stonehill Offshore Partners Limited***
      **Contact Person:** *Steve Nelson*
      **Phone No:**   *(212) 739-7474*
      **Fax No:**   *(212) 838-2291*
      **Email Address:**   *SNelson@stonehillcap.com*

*From:*   **Seller Name:**
      **Contact Person:**
      **Phone No:**
      **Fax No:**
      **Email Address:**



We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Distressed Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc. (the "LSTA") as of December 1, 2006, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. Capitalized terms used and not defined in this Confirmation shall have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date:** | October 1, 2008 |
| **Seller:** | ▨ Principal   ☐ Agent |
| **Buyer:** | Stonehill Offshore Partners Limited    ▨ Principal   ☐ Agent |
| **Credit Agreement:** | Amended and Restated First Lien Credit and Guaranty Agreement, dated as of December 19, 2006, among Hicks Sports Group LLC, Hicks Sports Group Holdings LLC, certain Subsidiaries of Hicks Sports Group LLC, as Guarantors, the Lenders party thereto, JPMorgan Securities Inc., as Joint Lead Arranger, Joint Bookrunner and Co-Syndication Agent, Barclays Capital Inc., as Joint Lead Arranger and Joint Bookrunner, Barclays Bank plc, as Co-Syndication Agent and JPMorgan Chase Bank, N.A., Administrative Agent and Collateral Agent |
| **Borrower:** | Hicks Sports Group LLC |
| **Form of Purchase:** | If no election is made, "Assignment" applies.<br>▨ Assignment<br>☐ Participation<br>☐ Transfer |

**Purchase Amount /**
**Type of Debt:**

| Type of Debt | Purchase Amount | Facility | CUSIP Number |
|---|---|---|---|
| Term Loan | USD 3,300,000.00 | Term Loan | |

**Purchase Rate:**   ▮▮▮▮

**Accrued Interest:**   ▨ Settled Without Accrued Interest
      ☐ Trades Flat

---

*(ticket #330290)*
Copyright © LSTA 2006. All rights reserved.   *Page 1 of 2*
*The Standard Terms and Conditions are available on the LSTA website at http://www.lsta.org.*

*Yes 50N*

**Credit Documentation
to be provided by Seller:**

☒ Yes (only applicable if Buyer was not a lender on Trade Date and made its
request on or prior to Trade Date)

☒ No

**LSTA Standard
Other Terms of Trade:**

☐ This transaction shall also be subject to the successful completion of the
purchase by Seller of the Purchase Amount of the Debt to be sold to Buyer
hereunder.

☐ This transaction shall also be subject to the successful completion of the sale
by Buyer of the Purchase Amount of the Debt to be purchased from Seller
hereunder.

☐ Flip representations shall apply (election is applicable only if Seller is a
Riskless Principal (i.e., the first box above has been checked), the settlement
of the sale of the Purchase Amount of the Debt to Buyer from Seller occurs no
later than one (1) business day after the settlement of the Purchase Amount of
the Debt by Seller from Seller's immediate prior seller(s) and the other criteria
specified in Section 11 of the Standard Terms and Conditions are met)

☒ Unless otherwise specified herein, Bank of America, N.A. shall not be
required to pay (in the aggregate) more than one half of one full Agent transfer
fee for transactions (specified in this or any other Confirmation) allocated by
an investment manager or advisor to multiple funds or accounts.

**Trade Specific
Other Terms of Trade:**       None

**Subject to:**       Negotiation, execution and delivery of reasonably acceptable contracts and
instruments of transfer in accordance herewith.

If you agree with the terms and conditions described herein, please provide the signature of a duly authorized officer
or other signatory where indicated below and return this letter to ███████████ at the following fax number:
████████ or e-mail address: ███████████████

If you have any questions, please contact ████████████

████████████                            **Stonehill Offshore Partners Limited
                                          by: Stonehill Capital Management LLC
                                             its Manager**

By: ████████████                         By: _____
Name: ████████                           Name: Steven D. Nelson
Title: ██                                Title: CFO
Date: ████                               Date: 10/7/08